## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DIANE HAMILTON, LYNNE P. CUNNINGHAM AND CLAIRE KANE,** *on behalf of themselves and all other employees similarly situated,* <br><br> *Plaintiffs,* <br><br> v. <br><br> **PARTNERS HEALTHCARE SYSTEM, INC., PARTNERS COMMUNITY HEALTHCARE, INC., THE BRIGHAM AND WOMEN'S HOSPITAL, INC., BRIGHAM AND WOMEN'S/FAULKNER HOSPITALS, INC., FAULKNER HOSPITAL, INC., MARTHA'S VINEYARD HOSPITAL, INC., THE MASSACHUSETTS GENERAL HOSPITAL, MCLEAN HEALTHCARE, INC., THE MCLEAN HOSPITAL CORPORATION, NANTUCKET COTTAGE HOSPITAL, NEWTON-WELLESLEY HOSPITAL, NEWTON-WELLESLEY HEALTH CARE SYSTEM, INC., NORTH SHORE CHILDREN'S HOSPITAL, INC., NORTH SHORE MEDICAL CENTER, INC., NSMC HEALTHCARE, INC., THE SALEM HOSPITAL, AND UNION HOSPITAL AUXILIARY OF LYNN, INC.,** <br><br> *Defendants.* | CASE NUMBER 1:09-CV-11461-DPW <br><br> CASE NUMBER 1:09-CV-11725-DPW |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs Diane Hamilton, Lynne P. Cunningham, and Claire Kane ("Plaintiffs"), by and through their counsel, hereby move the Court for preliminary approval of the proposed class and collective action settlement ("Settlement") set forth in the Stipulation and Settlement Agreement ("Settlement Agreement"),[1] attached as Exhibit A hereto. Specifically, the Parties respectfully request that the Court enter the proposed Order attached as Exhibit B hereto ("Preliminary Approval Order"), including provisions:

1.  Consolidating the case numbers in the Litigation for purposes of settlement;

2.  Entering an order granting Plaintiffs' request to amend the Complaints in the Litigation and granting Defendants fourteen (14) calendar days from the entry of that Order to file Amended Answers;

3.  Asserting jurisdiction over the claims alleged, the Parties in the Litigation, and the implementation and administration of this Settlement Agreement;

4.  Granting preliminary approval of the proposed settlement set forth in this Settlement Agreement (or as the same may be modified by subsequent mutual agreement of the Parties) as adequate, fair, and reasonable and in the best interests of all Plaintiffs, Opt-In Plaintiffs, and members of the Settlement Classes;

5.  Conditionally certifying the Settlement Classes for settlement purposes only;

6.  Appointing Diane Hamilton, Lynne P. Cunningham, and Claire Kane as "Plaintiffs," who together with Class Counsel, shall be authorized to act on behalf of all Plaintiffs, Opt-In Plaintiffs, and members of the Settlement Classes with respect to the Litigation and this Settlement Agreement;

7.  Appointing Class Counsel as counsel for the Settlement Classes pursuant to Fed. R. Civ. Pro. 23(g) and preliminarily approving Class Counsel's request for attorneys' fees, expenses, and costs;

---

[1]      The exhibits to the Settlement Agreement include the CAFA notice, two Claim Forms (one directed to current employees and one directed to former employees), a Settlement Notice, a joint press release, and an exhibit of compliance hotline numbers.

8.  Appointing a third-party claims administrator who is acceptable to the Parties as the Claims Administrator;

9.  Approving the form, content, and distribution of the proposed Settlement Notice and Claim Forms and setting a forty-five (45) calendar day deadline for the execution and return of fully completed Claim Forms, filing of objections, or becoming an opt-out;

10.  Requiring Authorized Claimants who are Current Employees as of the Court's entry of the Preliminary Approval Order to complete the Current Employee Certification and comply with the requirements therein; and

11.  Setting the hearing date for the final approval of the terms of the Settlement Agreement and entry of a Final Approval Order.

In support of Plaintiffs' unopposed motion for preliminary approval, Plaintiffs submit the following incorporated memorandum.

## I.    Introduction

Plaintiffs hereby move for preliminary approval of the proposed Settlement Agreement, which has been reached after several months of arm's-length and good faith negotiations, culminating in a mediation in Boston before Hunter Hughes, Esq., a mediator with extensive experience mediating wage and hour cases such as this one. The proposed Settlement will provide a fair and reasonable recovery to individuals employed by Defendants as non-exempt employees (the "Non-Exempt Employees") who had potential claims challenging Defendants' pay practices under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), certain other federal statutes, and under certain other Massachusetts laws.

This proposed settlement resolves claims raised by Plaintiffs in two actions, one alleging violations of federal law and the other alleging violations of state law. In the approximately one year since the filing of these lawsuits, the Parties have engaged in various litigation and motion practice, as more fully set forth in the attached Settlement Agreement. The Parties also voluntarily exchanged information needed for mediation and participated in a mediation which

involved the exchange of additional information, discovery, and legal arguments on the merits. These negotiations resulted in an agreement to settle the two actions on the terms set forth in the Settlement Agreement.   As this Settlement is the product of arm's-length negotiations by informed and experienced counsel, the terms of the Settlement Agreement are presumptively fair, reasonable, and deserving of preliminary approval.

## II.    Summary of the Terms of the Settlement and Relief Presently Sought

The Settlement Agreement provides that, if approved by the Court, Defendants will pay $17,250,000 to resolve in their entirety all claims set forth in Plaintiffs' First Amended Complaints ("Maximum Gross Settlement Amount").   (See Settlement Agreement at § II(X)) The proposed settlement will be administered by an independent and experienced third-party settlement administrator, Class Action Administration (the "Claims Administrator").   The Maximum Gross Settlement Amount covers settlement for back pay and liquidated/statutory damages available under each applicable law, as well as Class Counsel's attorneys' fees, expenses, and costs up to thirty-three percent (33.33%) of the total Maximum Gross Settlement Amount, subject to Court approval.   In addition, the proposed Settlement Agreement provides for service payments to each of the three named Plaintiffs in the amount of $5,000 for each named plaintiff (or $15,000, cumulatively), to be paid out of the Maximum Gross Settlement Amount. (Id. at § VII)   In addition, all settlement expenses, mediation costs, the costs of ELT training,[2] and the Settlement Classes' and Defendants' portion of taxes on the Final Settlement Payments, including but not limited to all FICA and FUTA taxes on the Final Settlement Payments are to be paid out of the Maximum Gross Settlement Amount.   (Id. at § II(X))

---

[2] ELT training costs are those costs incurred by Defendants for providing ELT's wage and hour training courses for managers, timekeepers, and non-exempt employees to current and future exempt and non-exempt employees during the two year period commencing with the execution of the proposed settlement agreement.

In order to most effectively obtain resolution of Plaintiffs' federal and state wage and hour claims, the proposed Settlement Agreement includes a release of the following claims: (i) any and all claims asserted in the Litigation; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, retaliation for complaining about wages or for asserting wage-related claims and/or any other claims of any kind, or any other wage-related or recordkeeping-related claims, damages or relief of any kind including but not limited to the FLSA, 29 U.S.C. § 201, *et seq.*, and any and all claims under Massachusetts law, including but not limited to the Massachusetts Payment of Wages Act, Mass. Gen. Laws Ch. 149 § 148, *et seq.*, the Massachusetts Minimum Fair Wages Statute, Mass. Gen. Laws Ch. 151 § 1, *et seq.*, the Minimum Wage Regulations, 455 CMR § 2.01, *et. seq.*, Mass. Gen. Laws Ch. 149 § 100, or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, retaliation, wage-related or recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation; (iii) any and all claims under state and federal law for earned wages, overtime, and/or missed or interrupted meal breaks, including such claims for breach of express contract or labor agreement, implied contract, money had and received in assumpsit, quantum meruit/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records; (iv) any and all claims pursuant to or derived from Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001 *et seq.* ("ERISA"), 29 U.S.C. § 1001, *et seq.*; (v) any and all claims pursuant to or derived from the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*; and (vi) any and all wage-and-hour laws or wage-related claims of any kind under other laws, including but not limited to any and all such claims pursuant to

other federal, local, or other states' laws and/or regulations.  For settlement purposes only, the Parties have agreed to certify only a FLSA Settlement Class and a Rule 23 Settlement Class.

Each putative class member's potential settlement payment will vary proportionately, as each member of the Settlement Classes is eligible to receive a pro rata share of the Revised Maximum Gross Settlement Amount[3] based upon their total earned wages for the applicable period (September 3, 2006 to the date of the Court's entry of the preliminary approval order) divided by the total earned wages of members of the Settlement Classes for the applicable period.  After this calculation is performed, if any resulting amount is less than one hundred dollars ($100.00), then those individuals credited with less than $100.00 will each be eligible to receive a potential settlement payment of $100.00 instead of the amount totaling less than $100.00.  For every other member of the Settlement Classes, his or her pro rata share will be recalculated by dividing his or her total earned wages during the applicable period by the total wages earned by putative class members for the same period.  The total amount allocated to those individual members of the Settlement Classes who receive a potential settlement payment of $100.00 will also be subtracted prior to recalculating the applicable pro rata shares so that such combined amounts equals the revised maximum gross settlement amount.

After the close of the opt-in period, the Claims Administrator will determine what percentage of the Revised Maximum Gross Settlement Amount was claimed by "Authorized Claimants."[4]  If fifty percent (50%) or more of the Revised Maximum Gross Settlement Amount

---

[3]      The Revised Maximum Gross Settlement Amount means the Maximum Gross Settlement Amount minus all Class Counsel's Fees and Costs, Mediation Costs, Service Payments, Settlement Expenses, ELT Training Costs, and an amount equal to the Settlement Classes' and Defendants' portion of taxes on Final Settlement Payments, including but not limited to all FUTA and FICA on the Final Settlement Payments.

[4]      Under the proposed Settlement Agreement, an Authorized Claimant is a member of the Settlement Classes or the authorized legal representative of such member of the Settlement Classes, who

is claimed by the Authorized Claimants, an Authorized Claimant's Potential Settlement Payment shall be deemed the Final Settlement Payment amounts.

If less than 50% of the Revised Maximum Gross Settlement Amount is claimed by the Authorized Claimants, the Claims Administrator shall calculate the Final Settlement Payment as follows:  If 75% or more of 50% of the Revised Maximum Gross Settlement Amount is claimed by the Authorized Claimants, then the difference between the total amount claimed by the Authorized Claimants and 50% of the Revised Maximum Gross Settlement Amount shall be distributed to the Authorized Claimants.  This re-distributed amount shall be added to the Authorized Claimant's potential settlement payment to determine each Authorized Claimant's Final Settlement Payment.  However, each Authorized Claimant's Final Settlement Payment shall be capped at no more than two times his or her originally calculated potential settlement payment.  Any amounts that exceed two times their originally calculated potential settlement payment will be allocated to the entire Final Settlement Class,[5] as set forth fully in the proposed Settlement Agreement.  If less than 75% of 50% of the Revised Maximum Gross Settlement Amount is claimed by the Authorized Claimants, then the difference between the total amount claimed by the Authorized Claimants and 50% of the Revised Maximum Gross Settlement Amount shall be distributed to the Final Settlement Class, as set forth fully in the proposed Settlement Agreement.  Any amounts that exceed two times an Authorized Claimant's potential settlement payment will be allocated to the entire Final Settlement Class, as set forth fully in the proposed Settlement Agreement.

---

submits a timely and fully completed Claim Form and Current Employee Certification (if a Current Employee), and becomes entitled to receive a Final Settlement Payment.

[5]    "Final Settlement Class" refers to all members of the Settlement Classes who do not timely and validly exclude themselves from the Final Settlement Class in compliance with the opt-out or exclusion procedures set forth in the proposed Settlement Agreement.

Any amount of the Maximum Gross Settlement Amount that is not distributed as Final Settlement Payments or pursuant to Class Counsel's Fees and Costs, settlement expenses, mediation costs, service payments, ELT training costs, and the Settlement Classes' and Defendants' portion of taxes, including but not limited to all FICA and FUTA of Final Settlement Payments, shall be donated to the Massachusetts League of Community Health Centers.

The proposed Settlement Agreement provides that the Claims Administrator will mail each individual who is a member of the Settlement Classes a Settlement Notice and Claim Forms.  (See Settlement Agreement at Exhibits 2 and 3)  Upon receipt, in order to receive a full settlement payment, members of the Settlement Classes must submit a fully completed Claim Form and Current Employee Certification (if a Current Employee of one of the Defendants as of the Court's entry of the preliminary approval order), so that it is received by the Claims Administrator on or before forty-five (45) calendar days after the date the Settlement Notice and Claim Forms are post-marked to members of the Settlement Classes. .  For Final Settlement Class members entitled to receive a Final Settlement Payment, Defendants will obtain a release of all claims that could have been asserted against it arising out of these individuals' wage and hour claims against Defendants during the applicable period, as stated more fully in the proposed Settlement Agreement.  (See id. at § VIII)  For individuals in the Rule 23 Class who have not timely filed a valid and enforceable request for exclusion, such claims will be barred by the Settlement Agreement once it is final, as stated more fully in the proposed Settlement Agreement.  (See id.)

After Court approval of the Settlement Agreement at or after the fairness hearing, such approval becoming final, the completion of settlement administration, and upon further order of

the Court, the Claims Administrator will ensure distribution of Final Settlement Payments to the members of the Settlement Classes authorized to receive a Final Settlement Payment, as set forth in the Parties' proposed Settlement Agreement.

Plaintiffs propose that, along with granting preliminarily approval of the proposed Settlement Agreement, the Court adopt the schedule set forth below, for the Parties to effectuate the various steps in the settlement approval process under the Settlement Agreement:

| Deadline | Event |
|---|---|
| Approximately 90 calendar days after entry of Preliminary Approval Order: | Mailing of Settlement Notice and Claim Forms. |
| 30 calendar days after date mailing of Class Notice and Claim Forms: | Mailing of a reminder postcard to each member of the Settlement Classes who has not yet submitted a Claim Form. |
| 45 calendar days after date mailing of Class Notice and Claim Forms: | Last day for Class Members to "opt out" of the Settlement Agreement or to submit written objections to the Settlement Agreement. Claims Administrator must receive opt-out and/or objection on or before 45 calendar days after date mailing of Class Notice and Claim Forms. |
| 45 calendar days after date mailing of Class Notice and Claim Forms: | Last day for class members to qualify as an Authorized Claimant by filing Claim Forms to join FLSA settlement. Claims Administrator must receive claim form on or before 45 calendar days after date mailing of Class Notice and Claim Forms. |
| Approximately 80 calendar days after date of mailing of Class Notice and Claim Forms: | Last day for filing documents in support of Final Settlement approval. |
| Approximately 165 calendar days after the Court grants preliminary approval of the proposed Settlement Agreement: | Final Settlement approval hearing. |
| Within 20 business days after the Final Effective Date (as defined in the Settlement Agreement): | Qualified class members shall be mailed a Final Settlement Payment (as defined in the Settlement Agreement), less applicable taxes and deductions and all class members will be mailed a copy of the Final Approval Order. |
| Within 10 calendar days after the Final Effective Date (as defined in the Settlement Agreement): | Defendants will effectuate payment of Class Counsel's fees, expenses, and costs. |

| Within 20 business days after the Final Effective Date (as defined in the Settlement Agreement): | The Claims Administrator will effectuate payment of Service Payments to Plaintiffs (as set forth in the Settlement Agreement). |
|---|---|
| 90 calendar days from the date on which the Final Settlement Payments are mailed: | Last day for qualified class member who was mailed a Final Settlement Payment to negotiate his or her settlement check. |

As set forth below, Plaintiffs submit that the proposed Settlement Agreement satisfies all the criteria for preliminary settlement approval under federal and state law in that it falls well within the range of reasonableness.  Accordingly, Plaintiffs respectfully request that the Court grant the requested relief.

### III.   **Procedural History**

On September 3, 2009, Plaintiffs Diane Hamilton, Lynne P. Cunningham, and Claire Kane commenced this litigation by filing a complaint in the United States District Court of Massachusetts, Case Number 1:09-cv-11461-DPW.   In their complaint, Plaintiffs asserted violations of the FLSA, as well as the ERISA, and the RICO, on behalf of themselves and other individuals who had been employed by Defendants.[6]  Plaintiffs alleged, on behalf of themselves and other individuals who had been employed by Defendants, that Defendants suffered or permitted various employees of Defendants to work without compensating them for all such hours worked as required by the FLSA.  In addition, Plaintiffs alleged, on behalf of themselves and other individuals who had been employed by Defendants, that Defendants failed to keep accurate records and breached their required ERISA fiduciary duties.  Plaintiffs also alleged, on behalf of themselves and other individuals who had been employed by Defendants, that Defendants engaged in an enterprise that comprised a pattern of racketeering activity by issuing misleading payroll checks in violation of RICO.  Finally, Plaintiffs alleged, on behalf of

---

[6] Plaintiffs also alleged in the federal action that Defendants James J. Mongan, M.D., and Dennis D. Colling and the affiliated entities are liable based on the referenced claims along with Defendants.  See Complaint, ¶¶ 14-16, Case No. 4:09-cv-40152-FDS.  These individuals and entities were dismissed as defendants in accordance with Plaintiffs' First Amended Complaint.

themselves and other individuals who had been employed by Defendants, that Defendants were estopped from asserting statutes of limitations defenses against Plaintiffs.  [See Docket No. 1, September 3, 2009, Case No. 1:09-cv-11461-DPW].

On or about September 10, 2009, Plaintiffs filed a complaint in the Middlesex Superior Court, Commonwealth of Massachusetts, Case No. 09-3540.   In their complaint, Plaintiffs asserted violations of Massachusetts wage laws, including Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B, on behalf of themselves and other individuals who had been employed by Defendants.[7]  Plaintiffs alleged that Defendants suffered or permitted various employees of Defendants to work without compensating them for all such hours worked as required by Massachusetts state law.  In addition, Plaintiffs alleged, on behalf of themselves and other individuals who had been employed by Defendants, other class action claims under Massachusetts state law, including but not limited to, claims for breach of express contract (for earned wages and missed or interrupted meal breaks), implied contract, money had and received in assumpsit, quantum meruit/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records.  On October 16, 2009, Defendants removed this state action from Middlesex Superior Court, Commonwealth of Massachusetts, to the United State District Court of Massachusetts, Case No. 1:09-cv-11725-DPW.  [See Docket No. 1, October 16, 2009, Case No. 1:09-cv-11725-DPW].

Plaintiffs sought to certify an opt-in collective action with respect to their FLSA claims; and to certify an opt-out class under Rule 23 of the Federal Rules of Civil Procedure with respect to their remaining claims.  With respect to damages, Plaintiffs sought the value of Plaintiffs' and

---

[7] Plaintiffs also alleged in their state action that Defendants James J. Mongan, M.D., and Dennis D. Colling and the affiliated entities are liable based on the referenced claims along with Defendants.  See Complaint, ¶¶ 2, 5-6, Case No. Case No. 09-3540.  These individuals and entities were dismissed as defendants in accordance with Plaintiffs' First Amended Complaint.

putative class members' unpaid wages, including fringe benefits, and an award of liquidated damages, reasonable attorneys' fees, expenses, expert fees, costs, and pre- and post-judgment interest.

The Parties engaged in litigation over several motions, including Defendants' motion to dismiss and Plaintiffs' motion for remand.  Thereafter, on June 28, 2010, the Parties entered into a Confidential Mediation Agreement, and the Parties agreed to cease all litigation-related activity and attempt to reach full and complete resolution of the claims in the federal and state complaints through mediation.

Over the subsequent months, the Parties exchanged information necessary to meaningfully examine, analyze, and mediate the claims at issue in this litigation.  Class Counsel specifically requested certain information about the potential class size, pay rates, work schedules, time actually recorded, scope of employment, and other potentially relevant information, which Defendants provided to Class Counsel prior to the mediation.   In turn, both sides utilized experts to conduct their own analysis regarding the potential liability if the case were to proceed.

The Parties prepared detailed mediation briefs setting forth the merits of their respective cases based upon the relevant law and facts and attended mediation before Hunter Hughes, Esq., who has extensive experience in mediating similar nationwide wage and hour cases with "hybrid" allegations pursuant to both state and federal law.

In preparation for mediation and in the course of this litigation, Class Counsel represents that it conducted significant factual investigation.  The investigation included research into the claims and analysis of the actual work performed by the Non-Exempt Employees and the manner in which Defendants compensated those Non-Exempt Employees.  (Declaration of Patrick J.

Solomon dated November 5, 2010 ("Solomon Decl.") at ¶4)   Class Counsel also undertook extensive interviews with Plaintiffs and certain other putative class members with respect to the claims at issue in this litigation.   (Id. at ¶5)   Class Counsel also investigated and analyzed the applicable state and federal law as applied to the facts discovered with regard to the claims asserted and the potential defenses thereto.   (Id. at ¶6)   This included the preparation of a mediation brief submitted to the mediator and exchanged with counsel for Defendants in order to facilitate the mediation.   It also included open discussion and debate at mediation between the Parties and through the neutral, third-party mediator regarding the Parties' differing legal positions analyzing the applicable law as applied to Defendants' pay practices.   (Id. at ¶ 9)

The mediation itself was conducted over the course of a full day and entirely at arm's-length.   The claims and likelihood of their success were debated between the Parties through the neutral, third-party mediator, and the two sides also discussed various points outside the presence of the mediator.   Matters addressed included the size and scope of the alleged claims, the likelihood of success on the merits, the manner in which alleged damages could be calculated and obtained, and the uncertainty of further litigation and potential outcomes.   (Solomon Decl. at ¶10)

The Parties are of the opinion that the proposed Settlement Agreement is fair, reasonable, and adequate.   Further, Class Counsel believes that the proposed Settlement Agreement is in the best interest of the members of the Settlement Classes in light of all known facts and circumstances, including the significant risks and delays of litigation that are presented by the defenses and potential pre-trial and appellate issues Defendants may assert.   (Id. at ¶12)   A resolution of this Litigation at this early stage – rather than following upon lengthy discovery, collective and class action briefing, further discovery post-certification, pretrial proceedings, and

potential trial and appellate activities and the costs attendant upon and likely to be incurred through such activities – most certainly greatly inures to the benefit of the Non-Exempt Employees.  Such litigation would likely take many years until final resolution, but the proposed Settlement Agreement here, being presented to the Court approximately one year from the filing of the Litigation, is, accordingly, a result well to the benefit of the members of the Settlement Classes.

In addition, Class Counsel has advised the representative Plaintiffs of the Settlement Agreement, who approve of the Settlement.  (Solomon Decl. at ¶13)

Defendants have asserted and continue to assert defenses to this action and have expressly denied and continue to deny any wrongdoing or legal liability of any kind associated with any and all past and present matters, disputes, claims, demands, and causes of action of any kind whatsoever in this Litigation and Plaintiffs' Federal and State Action Complaints. Nothing in the Settlement Agreement, the settlement proposals exchanged by the Parties, or any motions filed or Orders entered pursuant to the Settlement Agreement, may be construed or deemed as an admission by "Released Persons"[8] of any liability, culpability, negligence, or wrongdoing, and the proposed Settlement Agreement, each of its provisions, its execution, and its implementation, including any motions filed or Orders entered, shall not in any respect be construed as, offered, or deemed admissible as evidence, or referred to in any arbitration or legal proceedings for any purpose, except in an action or proceeding to approve, interpret, or enforce the proposed Settlement Agreement.  Furthermore, neither the proposed Settlement Agreement,

---

[8]   "Released Persons" refers to Defendants and their past, present, and future parent companies, affiliates, subsidiaries, divisions, predecessors, successors, partners, owners, joint venturers, affiliated organizations, shareholders, insurers, reinsurers and assigns, and each of its/their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, plan fiduciaries and/or administrators, benefits plans sponsored or administered by Defendants, divisions, units, branches and any other persons or entities acting on their behalf, including any party that was or could have been named as a defendant in the Litigation.

any motions filed, information and/or documents exchanged by the Parties in preparation for the mediation, settlement proposals exchanged by the Parties, or Orders entered pursuant to the proposed Settlement Agreement, shall constitute an admission, finding, or evidence that any requirement for representative litigation or class certification has been satisfied in this Litigation or any other action, except for the limited settlement purposes set forth in the proposed Settlement Agreement.   It is the desire and intention of the Parties that this proposed Settlement Agreement shall, for each member of the Settlement Classes, fully, finally, and forever completely settle, compromise, release, and discharge any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any member of the Settlement Classes, Rule 23 Releasing Persons,[9] or FLSA Releasing Persons[10] has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are based upon, relate to, or arise out of or reasonably could have arisen out of the facts, acts, transactions, occurrences, events or omissions alleged in the Litigation or by reason of the negotiations leading to this proposed Settlement Agreement, even if presently unknown and/or un-asserted, that occurred at any time up to and including the date the Court enters a Final Approval Order.

---

[9]     Rule 23 Releasing Persons means each and every member of the Rule 23 Settlement Class and his or her respective agents, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, exclusive bargaining agents, successors-in-interest, and assigns.

[10]     FLSA Releasing Persons means each and every member of the FLSA Settlement Class and his or her respective agents, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, exclusive bargaining agents, successors-in-interest, and assigns.

**IV.**   **Legal Argument**

    **A.**   **The Proposed Settlement Agreement Should Be Preliminarily Approved By the Court**

By this Motion, Plaintiffs seek preliminary approval of the proposed Settlement Agreement.  "Compromises of disputed claims are favored by the courts."  Williams v. First Nat'l Bank, 216 U.S. 582, 595 (1910); see also Durett v. Housing Auth. of Providence, 896 F.2d 600, 604 (1st Cir. 1990); In re Viatron Computer Sys. Corp., 614 F.2d 11, 15 (1st Cir. 1980); In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 317 (3d Cir. 1998) ("Prudential II").  Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources.  Federal Rule 23(e) provides that the court must approve any settlement of a class action.  In a class action, the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity."  In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3rd Cir. 1995) ("GM Trucks").  The ultimate determination whether a proposed class action settlement warrants approval resides in the Court's discretion.  Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968).  As discussed more fully below, at this stage of preliminary approval, there is clear evidence that the proposed Settlement Agreement is well within the range of possible approval and, thus, should be preliminarily approved.

        **1.**   **The standards and procedures for preliminary approval**

Rule 23(e) of the Federal Rules of Civil Procedure provides the mechanism for settling a class action, including, as here, through a class certified for settlement purposes:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

FED. R. CIV. P. 23(e); Amchem Prods. v. Windsor, 521 U.S. 591, 617 (1997); Durett, 896 F.2d at 604.

In determining whether preliminary approval is warranted, the primary issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable and adequate, so that notice of the proposed settlement should be given to class members, and a hearing scheduled to determine final approval.  See MANUAL FOR COMPLEX LITIGATION, FOURTH, § 13.14, at 172-73 (2004) ("MANUAL FOURTH") (at the preliminary approval stage, "The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.").  Preliminary approval permits notice of the hearing on final settlement approval to be given to the class members, at which time class members and the settling parties may be heard with respect to final approval.  Id. at 322.  Preliminary approval is, therefore, the first step in a two-step process

required before a class action may be finally settled.  Id. at 320.  In some cases, this initial assessment can be made on the basis of information already known to the court and then supplemented by briefs, motions, and an informal presentation from the settling parties.  Id. at 320-21.

In deciding whether a settlement should be preliminarily approved under Rule 23, courts look to whether there is a basis to believe that the more rigorous final approval standard will be satisfied.  See MANUAL FOURTH at § 21.633, at 321 ("Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members.")  The standard for final approval of a settlement consists of showing that the settlement is fair, reasonable, and adequate.  See, e.g., Durett, 896 F.2d at 604; Prudential II, 148 F.3d at 316-17; GM Trucks, 55 F.3d at 785.

### 2. There is a strong basis to believe that the Proposed Settlement Agreement is fair, reasonable, and adequate

Before granting final approval of a proposed settlement, the Court must find that it is fair, reasonable, and adequate.  See, e.g., FED. R. CIV. P. 23(e); MASS. R. CIV. P. 23(c); Durett, 896 F.2d at 604; Sniffin v. Prudential Ins. Corp., 395 Mass. 415 (1985).

A "strong initial presumption" of fairness arises where the parties can show that "the settlement was reached after arm's-length negotiations, that the proponents' attorneys have experience in similar cases, that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objectors or their relative interest is small."  Rolland v. Cellucci, 191 F.R.D. 3, 6 (D. Mass. 2000); see also City P'ship Co. v. Atlantic Acquisition Ltd. P'ship, 100 F. 3d 1041, 1043 (1st Cir. 1996).

"[T]here is no single test in the First Circuit for determining the fairness, reasonableness and adequacy of a proposed class action settlement." In re Relafen Antitrust Litig., 231 F.R.D. 52, 71-72 (D. Mass. 2005) (internal quotations omitted).  As a result, the courts of the First Circuit rely variously on a number of factors, the most common of which include:  (1) the complexity, expense, and duration of litigation, if the proposed settlement agreement is denied; (2) the amount of the proposed settlement compared to the amount at issue; (3) reaction of the class to the proposed settlement; (4) the stage of proceedings and the amount of discovery completed; (5) the plaintiffs' likelihood of success on the merits and recovering damages on their claims; (6) whether the proposed settlement agreement provides benefits which the plaintiffs could not achieve through protracted litigation; (7) good faith dealings and the absence of collusion; and (8) the proposed settlement agreement's terms and conditions.  See, e.g., Rolland v. Patrick, 562 F. Supp. 2d 176 (D. Mass. 2008); In re Relafen Antitrust Litig., 231 F.R.D. at 72; In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75, 93 (D. Mass. 2005); Celluci, 191 F.R.D. at 8-9; M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 671 F. Supp. 819, 822-833 (D. Mass. 1987).

In the case at bar, an examination of each of the factors that can be reviewed at this stage demonstrates that there is a strong basis to conclude that the proposed Settlement is fair, reasonable, and adequate to the members of the Settlement Classes.

First, with respect to complexity, expense, and duration of litigation, it is clear that the prosecution of this case would be lengthy and expensive.  If the proposed Settlement Agreement is not approved by the Court, the Parties face an extended and costly battle, first regarding conditional and class certification, and then summary judgment on the merits of whether the

Non-Exempt Employees were properly compensated.[11]   If Defendants' summary judgment motion is denied, the Parties would have to conduct expensive expert discovery and prepare for a trial that would likely be lengthy and costly.  Further, if this case does not settle, it would likely take years and result in substantial legal fees before reaching final resolution, including exhaustion of all appeals.

Second, with respect to the amount of the proposed settlement compared to the amount potentially at issue, the Parties agree that the value of the settlement is fair and reasonable given the various challenges facing Plaintiffs.  Specifically, based upon the multiple legal and factual risks continued litigation would entail, and the risk that Plaintiffs and the putative class members could recover nothing if this litigation were to proceed, the Parties agree that the proposed settlement amount is entirely appropriate and very favorable to the Plaintiffs and the classes they purport to represent.  See In re Lupron Mktg. & Sales Practices Litig., 345 F. Supp. 2d 135, 138 (D. Mass 2004) (finding the proposed settlement warranted preliminary approval because, inter alia, "the proposed settlement amount is sufficiently within the range of reasonableness").  Additionally, any amount of the Maximum Gross Settlement Amount that is not distributed as Final Settlement Payments or pursuant to Class Counsel's Fees and Costs, settlement expenses, mediation costs, service payments, ELT training costs, and the Settlement Classes' and Defendants' portion of taxes, including but not limited to all FICA and FUTA of Final

---

[11]   Litigating Plaintiffs' claims would require substantial additional preparation and discovery.  It ultimately would involve the deposition and presentation of numerous witnesses; the consideration, preparation and presentation of documentary evidence; and the preparation and analysis of expert reports and oppositions to such reports.  In addition, because Defendants deny that any violations of law have occurred or are occurring and given the state of the law, Defendants would possibly appeal any adverse ruling on the validity of their pay practices with respect to non-exempt employees.  In contrast, the proposed Settlement Agreement will yield a prompt, certain, and very substantial recovery for members of the Settlement Classes.  Such a result will benefit the Parties,  class members, and the court system.

Settlement Payments, shall be donated to the Massachusetts League of Community Health Centers.

Third, with respect to the reaction of the putative class members to the settlement, the Court will only be able to evaluate this factor after the notice period.

Fourth, with respect to the stage of proceedings and the amount of discovery completed, Class Counsel conducted a sufficient investigation of the claims asserted in the Litigation as well as the recoverable damages, thus, allowing them to assess the fairness of the proposed Settlement Agreement.   Likewise, Defendants conducted an extensive internal review in order to assess potential exposure.   Also, while the Parties are in a relatively early stage in the case, the Parties submitted substantial briefs to the mediator setting forth the facts and relevant legal analysis in the Litigation and argued numerous points as to the strengths and weaknesses of their respective positions.   The forthright nature of the mediation process and the negotiations between the Parties, as well as the views of an extremely respected and experienced mediator as to those strengths and weaknesses of the Litigation focused for the Parties the legal and factual issues presented by this case.   This proposed Settlement Agreement will resolve the legal risks which the Parties fully appreciate at this point in the Litigation.

Fifth, with respect to the Plaintiffs' likelihood of success in obtaining class certification and in recovering on the merits of the Litigation, Plaintiffs recognize that in any class litigation, class certification is a long and difficult battle.   While Plaintiffs are confident the class could be certified, there are risks in every litigation.

Sixth, with respect to whether the proposed Settlement Agreement provides benefits which Plaintiffs could not achieve through protracted litigation, the proposed Settlement Agreement provides the benefit of a prompt and fair resolution to all claims in the Amended

Complaints, and the avoidance of delay of the putative class members' receiving any portion of the proposed settlement amount.

Seventh, the proposed Settlement Agreement was reached as the result of good faith dealings and the absence of collusion.  Both Plaintiffs and Defendants are represented by highly experienced and competent counsel recognized as national experts in class action wage and hour litigation, who have litigated wage and hour cases aggressively and successfully on behalf of their respective clients.  Class Counsel has also obtained other significant court-approved settlements of class action wage and hour cases in the healthcare industry, in particular.  (See Solomon Decl. at ¶¶14-16)  The experience and reputation of counsel is paramount.  See, e.g., Cotton v. Hinton, 559 F.2d 1326 (5th Cir. 1977); In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 410 F.Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); Fisher Brothers v. Phelps Dodge Industries, Inc., 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

Further, not only was the proposed Settlement Agreement the result of protracted, good faith, arm's-length negotiations between experienced and informed counsel on both sides, but the proposed Settlement Agreement and its material terms were negotiated with the substantial assistance of an experienced mediator well-versed in the nuances of wage and hour class actions. The Settlement is, therefore, not the product of collusive dealings, but, rather, was informed by the vigorous prosecution of the Litigation by the experienced and qualified counsel.

The proposed $17.25 million settlement is a substantial result for an "off-the-clock" wage and hour class and will result in the potential for a meaningful settlement payment to each member of the Settlement Classes.  Significantly, the amount that member of the Settlement

Classes are eligible to receive will be determined based upon wages earned while working for the Defendants as a Non-Exempt Employee during the applicable statutory period so that fairness in payments will result.

This result is well within the reasonable standard.  Class Counsel also believe that the result is appropriate when considering the difficulty and risks of litigating class claims that involve the alleged uncompensated time worked by non-exempt employees under the FLSA and applicable state laws.

Accordingly, the standards for preliminary approval of the proposed Settlement Agreement are met in this case, and the Court should grant the present Motion.

### B.   Provisional Certification of the Settlement Classes is Appropriate

Pursuant to the proposed Settlement Agreement, and in accordance with other similar wage and hour cases settled in the federal courts, the Parties have stipulated, for settlement purposes only, to the following two classes:

    a.   **RULE 23 SETTLEMENT CLASS** refers to any and all non-exempt employees of DEFENDANTS at any time during the period from September 3, 2006 through and including entry of the Preliminary Approval Order; and

    b.   **FLSA SETTLEMENT CLASS** refers to any and all non-exempt employees of DEFENDANTS at any time during the period from September 3, 2006 through and including entry of the Preliminary Approval Order.

Both the Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class.  See, e.g., Amchem, 521 U.S. at 591; In re Lupron Marketing and Sales Practices Litigation, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (citing MANUAL FOURTH); see also Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998); Prudential II, 148 F.3d at 283.

Specifically, the First Circuit has established that where there is a "common disputed issue," courts should "view the issue . . . in favor of class action status." Tardiff v. Knox County, 365 F.3d 1, 5 (1st Cir. 2004); see also In re New Motor Vehicles Canadian Export Antitrust Litigation, 522 F.3d 6, 23 (1st Cir. 2008) (noting "existence of a common disputed issue weighs in favor of class certification, not against it). This is also the case in other circuits. See, e.g., Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir. 1985) ("[t]he interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action"). Here, as set forth below, all the elements of Section 16(b) of the FLSA and Rule 23 are met with respect to the proposed Settlement, which, accordingly, merits collective class and Rule 23 class certification.

## 1. The Elements of Rule 23(a) are Satisfied in the Present Case[12]

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, a named plaintiff must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of

---

[12] The prerequisites for a conditional certification of a FLSA collective action class are recognized to be more lenient than those under Rule 23 of the Federal Rules of Civil Procedure. *See, e.g.*, *Poreda v. Boise Cascade, L.L.C.*, 532 F. Supp. 2d 234, 239 (D. Mass. 2008) (explaining that conditional certification is regularly determined under a "fairly lenient" standard which "typically results in conditional certification of the representative class") (citing to *Trezvant v. Fidelity Employer Servs. Corp.*, 434 F. Supp. 2d 40, 43 (D. Mass. 2006)); *see also Baas v. Dollar Tree Stores, Inc.*, No. C 07-03108 JSW2009, 2009 WL 1765759, at *5 (N.D. Cal. June 18, 2009) (recognizing that "the standard to grant conditional certification of a collective action under the FLSA is more lenient than the standard to certify a class pursuant to Rule 23 [but noting that] Plaintiffs must still demonstrate that they are 'similarly situated' to the other members of the proposed collective action"); *Burk v. Contemporary Home Services, Inc.*, No. C06-1459RSM, 2007 WL 2220279, at *3 (W.D. Wash. Aug. 1, 2007) (recognizing that the FLSA "sets a more lenient standard for conditional certification of a representative class than does Rule 23 of the Federal Rules of Civil Procedure [and noting that c]ollective actions are not subject to the numerosity, commonality, and typicality rules of a class action suit under Rule 23") This memorandum, therefore, will not specifically address the standards for certifying the settlement collective action class inasmuch as it would follow *a fortiori* from meeting the Rule 23 prerequisites.

> all members is impracticable; (2) there are questions of law or fact
> common to the class; (3) the claims or defenses of the representative
> parties are typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the interests of the
> class.

FED. R CIV. P. 23(a).  See, e.g., Key v. Gillette Co., 782 F.2d 5, 7 (1st Cir. 1986) ("all four

requirements of Rule 23(a) must be met in order for certification of a class to be proper"); Barnes

v. American Tobacco Co., 161 F.3d 127 (3d Cir. 1998); Prudential II, 148 F.3d at 308-09.  Here,

all four elements are easily satisfied.

## 2.      Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable."  Plaintiffs are not required to come before the Court and detail, to the person, the

exact size of the class or to demonstrate that joinder of all class members is impossible.

"'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of

joining all members of the class."  Advertising Special. Nat. Ass'n v. Federal Trade Comm'n,

238 F.2d 108, 119 (1st Cir. 1956) (citing 3 MOORE'S FEDERAL PRACTICE 3423 (2d ed. 1948); see

also Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp., 149 F.RD. 65, 73 (D.N.J. 1993) (stating

that "[i]mpracticability does not mean impossibility" and "precise enumeration of the members

of a class is not necessary").  Numerosity is indisputable here as the proposed Settlement Classes

consist of approximately 50,000 non-exempt employees.  Thus, for settlement purposes only,

numerosity is met.

## 3.      Commonality Under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  The

commonality requirement is met if the plaintiff's grievances demonstrate "that there are common

questions of law or fact in the case."  So. States Police Benevolent Ass'n, Inc. v. First Choice

Armor & Equip., Inc., 241 F.R.D. 85, 87 (D. Mass. 2007) (characterizing commonality

requirement as a "low hurdle" that "can be met by even a single common legal or factual issue").[13]

Here, commonality is met insofar as the claims of the named Plaintiffs and the putative class members are all predicated on the core common issue as to whether Defendants allegedly failed to compensate them for all compensable time worked. Specifically, (a) whether non-exempt employees actually worked before or after their scheduled shifts or during their meal breaks without compensation and with the knowledge of their employer; (b) whether such time was in fact compensable time or *de minimis* and, therefore, not compensable; and (c) whether the meal period interruptions in this case rise to the level of destroying the "bona fide" meal period under the "predominant benefit" test. See Kirby v. Cullinet Software, Inc., 116 F.R.D. 303, 306 (D. Mass. 1987) (stating evidence of commonality need not be "exhaustive," but only "illustrative" (quoting Berenson v. Fanueil Hall, 100 F.R.D. 468, 470 (D. Mass. 1984)); see also Ford v. Townsends of Ark., Inc., No. 4:08cv00509 BSM, 2010 WL 1433455, at *7-9 (E.D. Ark. Apr. 9, 2010) (finding commonality because purported class members were not paid for similar pre- and post-work activities, and the common question of law was whether such activities were compensable); Morales v. Greater Omaha Packing Co., Inc., No. 8:08CV88, 2010 WL 1049277,

---

[13]    Rather than requiring that all questions of law or fact be common, Rule 23 only requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). Plaintiffs are not required to show that all class members' claims are identical to each other as long as there are common questions at the heart of the case; "despite some factual differences between the members of the class, commonality can still exist for purposes of 23(a)(2)." In re Dehon, Inc., 298 B.R. 206, 214 (Bankr. D. Mass. 2003) (holding that because one "can reasonably infer that certain defenses of the individual members of the putative class to Dehon's subordination strategy will be available to every other member . . . . commonality is established").

Indeed, only a single common question is sufficient to satisfy the requirements of Rule 23(a)(2). See, e.g., 1 Robert Newberg, NEWBERG ON CLASS ACTIONS, § 3.10; accord So. States Police Benevolent Ass'n, 241 F.R.D. at 87. "The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that is, there need be only a *single issue common* to all members of the class. Therefore, this requirement is easily met in most cases." Natchitoches Parish Hosp. Servs. Dist. v. Tyco Int'l., Ltd., 247 F.R.D. 253, 264 (D. Mass. 2008) (quoting 1 Newberg, NEWBERG ON CLASS ACTIONS, § 3.10) (emphasis added).

at *7-8 (D. Neb. Mar. 17, 2010) (finding commonality because "[w]hether the employees are engaging in compensable pre- and post-shift activities [depends upon] non-unique general allegations that particular categories of activities are compensable, yet the defendant fails to compensate for these activities"); Prasker v. Asia Five Eight LLC, No. 08 Civ. 5811(MGC), 2010 WL 476009, at *2 (S.D.N.Y. Jan. 6, 2010) (granting final approval of certification of class and class action settlement after finding the proposed class also satisfied commonality prong based on common legal issues about the way class members were compensated despite differences in positions).

This is the paradigm, particularly in a settlement context, of a common issue sufficient to meet the 23(a)(2) standard.

### 4.    Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members.[14]  The typicality requirement is satisfied when the class members' claims "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory." Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009) (quoting In re Am. Med. Sys., Inc., 75 F.3d 1069, 1082 (6th Cir. 1996); see also Marisol A. v. Giuliani, 126 F.3d 372 (2d Cir. 1997) (typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability").  Notably, a "finding of typicality will generally not be precluded even if there are 'pronounced factual

---

[14]    The commonality and typicality requirements of Rule 23(a) "tend to merge." Gen.Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 n. l3 (1982).  The requirement of this subdivision of the Rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative.  See, e.g., id.; In re Screws Antitrust Litigation, 91 F.R.D. 52, 56 (D. Mass. 1981) (highlighting requirement that class interests be adequately protected); Prudential II, 148 F.3d at 311; Bogosian v. Gulf Oil Corp., 561 F.2d 434 (3d Cir. 1977); Asbestos School Litig., 104 F.R.D. at 429-30.

differences' where there is a strong similarity of legal theories."  In re Carbon Black Antitrust Litig., No. Civ.A.03-10191-DPW, 2005 WL 102966, *12 (D. Mass. Jan. 18, 2005) (quoting In re Linerboard Antitrust Litig., 203 F.R.D. 197, 207 (E.D. Pa. 2001)); see also Hayworth v. Blondery Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992) ("Factual differences will not render a claim atypical if the claim arises from the same event or practice of course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory.").[15]

For settlement purposes only, this requirement is also met by the Rule 23 Class which is based on the same claims.  Thus, Plaintiffs' claims are "typical" with regard to the entire class. Further, this requirement is met by the proposed Rule 23 settlement class as Plaintiffs' claims allegedly all arise from a common course of alleged conduct by Defendants in allegedly failing to compensate non-exempt employees for all time worked.  Thus, for the purpose of settlement, Plaintiffs contend that the case each member of the Rule 23 Class would put on would be essentially the same case (hence, commonality) and the named class representatives would, themselves, put on that case (hence, their claims are typical).

### 5.    Adequacy Under Rule 23(a)(4)

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class."  In the First Circuit, "[t]he requirement of adequate representation is met [where] [1] the named plaintiffs' interests are not antagonistic with those of the rest of the class but rather involve the identical legal issue, and [2] the plaintiffs' attorneys are qualified to conduct the litigation." Bouchard v. Sec. of Health & Human Servs., No. Civ.A. 78-0632-F, 1982 WL 594675, at *7 (D.

---

[15]    In other words, "[t]he 'typicality' requirement focuses less on the relative strengths of the named and unnamed plaintiffs' case than on the similarity of the legal and remedial theories behind their claims." In re Relafen Antitrust Litig., 231 F.R.D. 52, 69 (D. Mass. 2005) (quoting Jenkins v. Raymark Indus., 782 F.2d 468, 472 (5th Cir. 1986)); Weiss v. York Hosp., 745 F.2d 786, 809-10 (3d Cir. 1984).

Mass. Jan. 11, 1982); see also Andrews v. Bechtel Power Co., 780 F.2d 124, 130 (1st Cir. 1985) (stating Rule 23(a)(4) requires "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation").  These two components are designed to ensure that absentee putative class members' interests are fully pursued.

Adequacy is met here for purposes of settlement only.  Plaintiffs' attorneys, proposed "Class Counsel," are experienced and competent in complex litigation and have an established track record in employment law, including, specifically, the litigation and settlement of wage and hour cases in the healthcare industry.  (See Solomon Decl. at ¶¶14-16).  In turn, the Named Plaintiffs have no interests antagonistic to the putative Rule 23 Class and have demonstrated their allegiance to this Litigation through their participation in the Litigation and the settlement process on behalf of all of the putative class members.

Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here, Plaintiffs now turn to consideration of the factors which, independently, justify certification of the Rule 23 Class under subdivision 23(b)(3) of the Rule.

**6.      The Requirements of Rule 23(b)(3) Are Met in the Settlement Context**

Plaintiffs' proposed Rule 23 Class also meets the requirements of Rule 23(b)(3).  Under Rule 23(b)(3), a class action may be maintained if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:   (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED. R CIV. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623.  Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues.  Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 39 (1st Cir. 2003) (noting "courts have usually certified Rule 23(b)(3) classes even though individual issues were present"); In re Sugar Ind. Antitrust Litig., 73 F.R.D. 322, 344 (E.D. Pa. 1976).

The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance."  Hochschuler v. G.D. Searle & Co., 82 F.R.D. 339 (N.D. Ill. 1978); see also In re TJX Cos. Retail Sec. Breach Litig., 246 F.R.D. 389, 398 (D. Mass. 2007) ("Need for individualized damages decisions does not ordinarily defeat predominance requirement for class certification where there are disputed common issues as to liability."); Dietrich, 192 F.R.D. 119 (in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class").  Rule 23(b)(3) does not require that all questions of law or fact be common.  See, e.g., Smilow, 323 F.3d at 39 (1st Cir. 2003) (pointing out Rule 23(b)(3) "requires merely that common issues predominate"); In re Telectronics Pacing Sys., 172 F.R.D. 271, 287-88 (S.D. Ohio 1997).  In this regard, courts generally focus on the liability issues and whether these issues are common to the class.  If so, particularly in the settlement context, common questions are held to predominate over individual questions.  See id.

Plaintiffs assert that common questions of law and fact predominate.  All of the claims of the proposed Rule 23 Class arise out of alleged compensation practices affecting the pay of non-exempt employees.  As a result, Plaintiffs allege that putative class members all suffered the same harms (i.e., uncompensated pre- or post-shift work, missed or interrupted meal breaks,

and/or uncompensated trainings). Likewise, all of the alleged harms occurred in Massachusetts, and all putative class members' claims are subject to Massachusetts and federal law. Therefore, the proposed Rule 23 Class presents common operative facts and common questions of law which predominate over any legal or factual variations in the application of the Defendants' compensation policies to certain Non-Exempt Employees.

These common questions of law and fact referred to above, specifically in Part IV.B.3, suffice in this settlement class to present a predominance of common issues.

The Parties further stipulate for settlement purposes only that superiority is likewise met in the settlement context because this proposed Settlement Agreement will resolve the pending Litigation against all Defendants in a single, consolidated proceeding – obviating the need for multiple, parallel lawsuits. Further, given the alleged commonality of claims relating to Defendants' compensation practices and the plethora of complex legal issues relating to the claims raised in this litigation, there would be little or no interest for each putative class member to proceed with a "single plaintiff" case.

Accordingly, strictly for the purposes of settlement only, the Parties agree that there is no danger that individual variations, type or magnitude of damage suffered by individual putative class members will affect predominance, as the Named Plaintiffs allege the same type of damages – and seeks the same type of relief – as all members of the proposed settlement classes.

Finally, resolution of the claims asserted in this Litigation is superior to the individual adjudication of the putative class members' claims for compensatory relief. In particular, the proposed Settlement provides putative class members with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that the allegedly injured parties will obtain timely

relief at the conclusion of the litigation process.  Settlement also may relieve judicial burdens that would be caused by adjudication of the same issues in multiple trials, including trials in each of the lawsuits being settled herein.

Accordingly, strictly in the proposed settlement posture in which the Litigation now stands, the proposed Rule 23 Class is appropriate and should be certified for settlement purposes only.

### C.     The Proposed Settlement Notice Provides Adequate Notice To The Members of the Proposed Settlement Classes

#### 1.     The Proposed Settlement Notice Satisfies Due Process

The Parties propose that the Claims Administrator send, by U.S. mail, to each member of the proposed Settlement Classes, as defined above and in the proposed Settlement Agreement (see Settlement Agreement at § V(g)), a Settlement Notice (attached as Exhibit 4 to the Settlement Agreement) and an appropriate Claim Form (substantially in the forms as attached as Exhibits 2 and 3 to the Settlement Agreement).

The Parties propose that the Settlement Notice and appropriate Claim Form be sent to all known and reasonably ascertainable members of the Settlement Classes based on Defendants' records.  The proposed Settlement Agreement provides that the Claims Administrator will ensure that all members of the Settlement Classes are mailed the Settlement Notice and appropriate Claim Form by taking all reasonable steps to trace the addresses of any member of the Settlement classes for whom a Settlement Notice or Claim Form is returned by the post office as undeliverable, including tracking of all undelivered mail and performing additional address searches.  The Claims Administrator will then promptly re-mail the Settlement Notice and Claim Forms to members of the Settlement Classes for whom new addresses are found following this "skip trace."

This notice plan is consistent with class certification notices approved by numerous state and federal courts, and is, under the circumstances of this Litigation, the best notice practicable. See, e.g., Wright v. Linkus Enters., Inc., No. 2:07-cv-01347-MCE-CMK, 2009 WL 2365436, at *7-8 (E.D. Cal. July 29, 2009) (holding notice involving same mail procedures as here meets both Rule 23(e) requirement that "proposed settlement is fundamentally fair, adequate, and reasonable" and "Rule 23(c)(2)(B) requirement that the Court direct 'best notice that is practicable under the circumstances'") (quoting FED. R. CIV. P. 23(c)(2)(B), (e)); Davis v. Abercrombie & Fitch Co., No. 08 CV 01859(PKC)(AJP), 2009 WL 1542552, at *1-4 (S.D.N.Y. June 2, 2009) (approving issuance of notice to class using same method as applied here); In re M.L. Stern Overtime Litig., No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *6-7 (S.D. Cal. Apr. 13, 2009) (finding same mail procedure as applied here to be the "best notice practicable"); Adams v. Inter-Con Security Sys., Inc., No. C-06-5428 MHP, 2007 WL 3225466, at *3-4 (N.D. Cal. Oct. 30, 2007) (finding that notice using same mail procedure as here "satisfies the notice requirements of Rule 23(e), and . . . all other legal and due process requirements").

### 2.    The Proposed Settlement Notice is Accurate, Informative, and Easy to Understand

Under FED. R. CIV. P. 23(e), class members are entitled to notice of any proposed settlement before it is ultimately approved by the Court.  Under Rule 23(e) and the relevant due process considerations, adequate notice must be given to all absent class members and potential class members to enable them to make an intelligent choice as to whether to opt-in to the proposed FLSA Settlement Class or opt-out of the proposed Rule 23 Class.  See, e.g., Weinberger v. Great Northern Nekoosa Corp., 925 F.2d 518, 523 (1st Cir. 1991) (stating "the court's power to approve or reject a settlement under Rule 23(e) enables the court to ensure fairness for the class members" (quoting 3B MOORE'S FEDERAL PRACTICE ¶ 23.91 at 23-533 to

23-534)); Prudential II, 148 F.3d at 326-27; Valentino v. Carter-Wallace, Inc., 97 F.3d 1227 (9th Cir. 1996).   Similarly, pursuant to Section 16(b) of the FLSA, putative class members are entitled to notice to afford them with an adequate opportunity to opt-in to the Litigation.   See 29 U.S.C. § 216(b).

Here, the proposed Settlement Notice provides clear and accurate information as to the nature and principal terms of the proposed Settlement Agreement (as well as an explanation of the method of calculating the potential and final settlement payments), the procedures and deadlines for opting-in to the proposed FLSA Settlement Class or opting-out of the Rule 23 Class and submitting objections, the consequences of taking or foregoing the various options available to members of the Settlement Classes, and the date, time and place of the final settlement approval hearing.   See MANUAL FOURTH at § 21.312.   Pursuant to FED. R. CIV. P. 23(h), the proposed Settlement Notice also sets forth the maximum amount of Class Counsel's fees, expenses, and costs which may be sought by Class Counsel.

Accordingly, the proposed Settlement Notice complies with the standards of fairness, completeness, and neutrality required of such a settlement class notice disseminated under authority of the Court.   See, e.g., 4 NEWBERG ON CLASS ACTIONS at §§ 8.21, 8.39; MANUAL FOURTH at §§ 21.311-21.312.

### D.    Claims To Be Certified

Pursuant to the Parties' proposed Settlement Agreement, the Parties specifically request that the Court certify, for settlement purposes only, the following claims:  the FLSA, 29 U.S.C. § 201 et seq., ERISA, 29 U.S.C. § 1001 et seq., claims for breach of express contract (for earned wages and missed or interrupted meal breaks), implied contract, money had and received in assumpsit, quantum meruit/unjust enrichment, negligent misrepresentation, failure to keep

accurate records, and Massachusetts wage laws, including Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B.  (<u>See</u> Settlement Agreement at § III(G)).

### E.      A Final Fairness Hearing Should be Scheduled

The Court should schedule a final fairness hearing to determine that final approval of the proposed Settlement Agreement is proper.  The fairness hearing will provide a forum to explain, describe or challenge the terms and conditions of the proposed Settlement Agreement, including the fairness, adequacy and reasonableness of the proposed Settlement Agreement.  At that time, moreover, Class Counsel will present their application for their fees and expenses pursuant to Rule 23(h) as well as for the award of service payments to the named class representatives. Accordingly, the Parties request that the Court schedule the final fairness hearing approximately 165 calendar days from the date of this motion, as required by 28 U.S.C. § 1715, at the District of Massachusetts, Boston Division.

## V.      <u>Conclusion</u>

For the foregoing reasons, the Parties respectfully request that this Court enter the Preliminary Approval Order, attached as Exhibit B hereto, which, <u>inter alia</u>:

1.      Consolidating the case numbers in the Litigation for purposes of settlement;

2.      Entering an order granting the Plaintiffs' request to amend the Complaints in the Litigation and granting Defendants fourteen (14) calendar days from the entry of that Order to file Amended Answers;

3.      Asserting jurisdiction over the claims alleged, the Parties in the Litigation, and the implementation and administration of this Settlement Agreement;

4.      Granting preliminary approval of the proposed settlement set forth in this Settlement Agreement (or as the same may be modified by subsequent mutual agreement of the Parties) as adequate, fair, and reasonable and in the best interests of all Plaintiffs, Opt-In Plaintiffs, and members of the Settlement Classes;

5.      Conditionally certifying the Settlement Classes for settlement purposes only;

6.      Appointing Diane Hamilton, Lynne P. Cunningham, and Claire Kane as "Plaintiffs," who together with Class Counsel, shall be authorized to act on behalf of all Plaintiffs, Opt-In Plaintiffs, and members of the Settlement Classes with respect to the Litigation and this Settlement Agreement;

7.      Appointing Class Counsel as counsel for the Settlement Classes pursuant to Fed. R. Civ. Pro. 23(g) and preliminarily approving Class Counsel's request for attorneys' fees, expenses, and costs;

8.      Appointing a third-party claims administrator who is acceptable to the Parties as the Claims Administrator pursuant to Section XI;

9.      Approving the form, content, and distribution of the proposed Settlement Notice and Claim Forms and setting a forty-five (45) calendar day deadline for the execution and return of fully completed Claim Forms, filing of objections, or becoming an opt-out;

10.     Requiring Authorized Claimants who are Current Employees as of the Court's entry of the Preliminary Approval Order to complete the Current Employee Certification and comply with the requirements therein; and

11.     Setting the hearing date for the final approval of the terms of the Settlement Agreement and entry of a Final Approval Order.


Dated:  November 5, 2010


                        Respectfully submitted,


                                /s/  Patrick J. Solomon, Esq.
                                J. Nelson Thomas, Esq.
                                Patrick J. Solomon, Esq.
                                Thomas & Solomon LLP
                                Counsel for Plaintiffs
                                693 East Avenue
                                Rochester, NY 14607
                                Telephone:     585.272.0540
                                Facsimile:     585.272.0574
                                nthomas@theemploymentattorneys.com
                                psolomon@theemploymentattorneys.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was filed through ECF system and will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


Dated:  November 5, 2010                    /s/  Patrick J. Solomon
                                            Patrick J. Solomon