```
 1                UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
 2

 3

 4   DIANE HAMILTON, ET AL.,           )
                                       )
 5                  Plaintiffs,        )
                                       )
 6                                     ) No. 1:09-cv-11461-DPW
     vs.                               )     1:09-cv-11725-DPW
 7                                     )
                                       )
 8   PARTNERS HEALTHCARE SYSTEM,       )
     INC., ET AL.,                     )
 9                                     )
                    Defendants.
10

11
     BEFORE:  THE HONORABLE DOUGLAS P. WOODLOCK
12

13
                       STATUS CONFERENCE
14

15

16
           John Joseph Moakley United States Courthouse
17                       Courtroom No. 1
                        One Courthouse Way
18                       Boston, MA 02210
                   Thursday, December 23, 2010
19                         11:38 a.m.

20

21

22             Brenda K. Hancock, RMR, CRR
                   Official Court Reporter
23        John Joseph Moakley United States Courthouse
                     One Courthouse Way
24                    Boston, MA 02210
                       (617)439-3214
25
```

```
 1     APPEARANCES:

 2
            THOMAS & SOLOMON
 3          By:  Patrick J. Solomon, Esq.
            693 East Avenue
 4          Rochester, NH 14607
            On behalf of the Plaintiffs.
 5
            LITTLER MENDELSON, PC
 6          By:  Lisa A. Schreter, Esq.
                 Anne Mellen, Esq.
 7          3348 Peachtree Road, STE 1100
            Atlanta, GA 30326
 8              - and -
            By:  David C. Casey, Esq.
 9          One International Place
            Suite 2700
10          Boston, MA 02110
            On behalf of the Defendants.
11

12

13
       ALSO PRESENT:
14
               Joan Stoddard, Esq
15             Partners Healthcare System

16

17

18

19

20

21

22

23

24

25
```

1        (The following proceedings were held in open court
2   before the Honorable Douglas P. Woodlock, United States
3   District Judge, United States District Court, District of
4   Massachusetts, at the John J. Moakley United States Courthouse,
5   One Courthouse Way, Courtroom 1, Boston, Massachusetts, on
6   Thursday, December 23, 2010):
7        THE CLERK:  All rise.
8        (The Honorable Court entered the courtroom at 11:38 a.m.)
9        THE CLERK:  This Honorable Court is now in session.
10  You may be seated.
11       Calling the case Civil Actions 09-11461 and 09-11725,
12  <u>Dianne Hamilton, et al. versus Partners Health Care System,</u>
13  <u>Inc. et al</u>.
14       Will counsel please identify themselves for the
15  record.
16       MR. SOLOMON:  Good morning, your Honor.  Patrick
17  Solomon, Thomas & Solomon, on behalf of the plaintiffs.
18       MS. SCHRETER:  Good morning, your Honor.  Lisa
19  Schreter on behalf of the defendants.  I am joined by my
20  colleague, Anne Mellen, and my colleague here in Boston, David
21  Casey, and our client, Joan Stoddard, who comes from the
22  Partners Health Care System.
23       THE COURT:  Well, I have a few questions.  First,
24  where does the $17,000,000 and change come from?  What does it
25  relate to?  It is a lot of money, but what does it relate to?

1   What is the damage theory that led to that?
2           MR. SOLOMON:  The damage amounts came from our review
3   of data that was produced by the Partners Health Care System.
4   We then took that data and analyzed it based on the potential
5   for meals that employees could have worked, the number of
6   shifts that would have been eligible for meal breaks.  We then
7   took that against the investigation that we had conducted to
8   determine the frequency of missed meals and off-the-clock hours
9   worked.  We then took the --
10          THE COURT:  When you say you did, did you have an
11  expert engaged to do this?
12          MR. SOLOMON:  We did have an expert.
13          THE COURT:  Is there an expert report?
14          MR. SOLOMON:  There was no expert reports exchanged.
15  The damage calculations were confidential on each side.  We
16  then shared with the mediator information from the expert.
17          THE COURT:  What is the percentage figure, from the
18  plaintiffs' point of view, of the proposed class award to what
19  reasonably could have been contended for in the litigation?
20          MR. SOLOMON:  It's a very difficult number to
21  estimate, and depending on which theories had succeeded at
22  trial, we estimated that there would be some risk, as there are
23  currently decisions out of the District of Massachusetts that
24  the state law claims would not be viable claims on some of the
25  grounds.

1        So, from a percentage standpoint, I hate to try and
2   give an estimate.
3        THE COURT:  Well, you may hate to, but if you are
4   going to get me to approve it, you are going to have to do
5   something better than simply say we negotiated 17,000,000 and
6   some change.
7        So, the short of it is, I am not satisfied that I have
8   before me adequate information to determine the question of
9   cost-benefit analysis of litigation here to approve.
10       Now, that is a larger issue.  I guess I want to
11  understand in a more granular way how I can say that each
12  member of the class had precisely the same damages, because
13  that is the theory here.  Are you saying that everyone, more or
14  less, had the same damages, and how do I find that?
15       MR. SOLOMON:  I think under the settlement the --
16       I believe you wanted to comment on that.
17       MS. SCHRETER:  Sure, your Honor.  Under the settlement
18  formula, damages are allocated based on total earnings during
19  the class period, so that --
20       THE COURT:  Well, how does total earnings assure me
21  that it is a fair stalking horse for off hours?
22       MS. SCHRETER:  Your Honor, I think what the parties
23  had used earnings for is a proxy for the number of shifts that
24  have been worked by the individual.
25       THE COURT:  "Stalking horse" is the term I used, but

1   how do I know that in this circumstance I do not have some
2   hospitals in which this was very common, some hospitals in
3   which it was not common, some shifts in which it was very
4   common, some shifts in which it was uncommon?
5           There is, at least on the face of it, the potential
6   for I think fairly substantial conflict among class members.
7   If someone says, Every day I got dinked my dining hours, I got
8   off hours, forced to do off-hours time, and someone else says,
9   It didn't happen to me that much, then I have got a class
10  conflict among the class members.
11          So, merely saying that it is a proxy is exegesis by
12  assertion.  It does not explain to me how this is a fair
13  rendering of the relative exposures of the class members.
14          MS. SCHRETER:  Your Honor, and with all respect, in a
15  case of this nature it is, at its heart, an off-the-clock work
16  case.
17          THE COURT:  I understand what it is.  This is also a
18  class action, and "class action" does not mean people coming to
19  court with lots of pages of paper but very little explanation,
20  if you want the Court's approval for it.
21          I still do not understand anything other than somebody
22  saying it is a proxy that leaves me with the settled
23  understanding that there are not significant disparities in the
24  harm to class members.  I just do not know.  I do not know how
25  Salem and Union Hospital compare to Faulkner.  I do not know

1   enough to be able to say that.  What I know is that Partners
2   was prepared to cough up $17,000,000 and change to make this go
3   away and do it, by the way, with a gag order, and that the
4   plaintiffs' counsel thinks that they are going to get 33
5   percent for a case that was not discovered at all, and that
6   does not happen in this context without my approval.
7           So, I have outlined, I think, for you two major issues
8   with respect to the damage amount, which, as far as I am
9   concerned right now, is like *Lohengrin*:  No one knows from
10  whence it came, and the potential for class conflict, conflict
11  among members of the class.  I simply have no basis for saying
12  that everybody experienced the same harm and, consequently,
13  that some people are not getting overpaid, and some people are
14  getting underpaid in this.  And until I do, I do not think I
15  can fairly allow the class to go forward, however venerable the
16  mediator may have been.
17          So, those are two that, if you want to, and I assume
18  you may, want to address, you will have to do it with
19  additional pleadings before me.
20          Now let me go through some of the other problems that
21  I have with this.  I should tell you that I do not like the
22  language "Preliminary Approval."  It suggests that I have done
23  some approval.  I will authorize notice; that is what I do at
24  this stage.  But the old language of "Preliminary Approval"
25  seems to me to be misleading, potentially misleading to those

1   who receive notice.  The language that I use is derived from
2   the ALI Principles of Aggregate Litigation.  An example of it,
3   I will give you one, is a class -- I did certify a settlement
4   class in an MDL case called M3Power Razor System.  It is
5   05-11177 in this District.
6           And I would note, for purposes of the documentation
7   that was submitted, that there is no "Middle District of
8   Massachusetts."  I assume that this settlement submission is
9   the product as much of a word processer as it is reasoned
10  analysis.  At least those kinds of mistakes are not ones that
11  give me a feeling of security regarding the care with which the
12  class settlement was undertaken.
13          MR. SOLOMON:  I'm sorry, your Honor.  May I ask what
14  the "Middle District" reference is to?
15          THE COURT:  Sure.  Let me see if I can find it.
16          MR. SOLOMON:  And I apologize --
17          THE COURT:  All right.
18          MR. SOLOMON:  -- for that.
19          THE COURT:  Let me see if I can find it as I go
20  through.
21          Well, perhaps the easiest way for me, rather than take
22  time right now, is to go through the documentation to indicate
23  my views here.
24          Let us take a look starting with the Notice.  Page 3
25  of what is called Exhibit 4, I would change the language at the

```
 1    bottom, the second-to-the-last sentence from "preliminarily
 2    approved" to "authorized notice of."
 3             I turn to page 6 of this, and this is the gag order.
 4             Why do you need a gag order?  I mean, apart from
 5    unhappy publicity, why do you need a gag order?
 6             MS. SCHRETER:  Your Honor, we don't believe that there
 7    is anything in conflict under Rule 23 or the FLSA in having
 8    this settlement be confidential among the class members.  It's
 9    obviously --
10             THE COURT:  Why?  What is the justification for it?
11             There used to be an Assistant U.S. Attorney in this
12    building -- not in this building, the older building -- who
13    used to say, "I know of no law to the contrary," which was
14    reflective of, I think, more his knowledge of the law than
15    where the law was going.
16             I am asking an affirmative question.  Why do you need
17    a gag order?
18             MS. SCHRETER:  Your Honor, we are looking -- the
19    System is looking for peace, that this is the end of this kind
20    of litigation.
21             THE COURT:  Peace and quiet --
22             MS. SCHRETER:  Yes, your Honor.
23             THE COURT:  -- and lack of transparency in judicial
24    decisions.
25             MS. SCHRETER:  Your Honor, I don't believe there is
```

1   any lack of transparency.  We are not looking to seal your
2   order.  It is a matter of public record.
3           THE COURT:  So, the people cannot talk about this?
4   People who are the objects of this settlement cannot talk to
5   the media about it?
6           MS. SCHRETER:  That's correct, your Honor.
7           THE COURT:  And the justification is peace and quiet?
8           MS. SCHRETER:  Your Honor, we believe that there is no
9   benefit to our system to have this the matter of press scrutiny
10  and attention.  It is going to be subject to your rigorous
11  approval protecting the class.  The class will be given ample
12  notice and the opportunity to object to this settlement and
13  appear, and we believe that that serves all the interests that
14  are in play in this kind of a case.
15          THE COURT:  So that, no member of the class may notify
16  the media about the terms here or solicit or discourage
17  participation during the opt-in period?
18          MS. SCHRETER:  That's correct, your Honor.
19          THE COURT:  Why can't they?  Why couldn't a class
20  member say, This is a lousy -- as I am right now -- saying this
21  is a settlement without adequate foundation and people should
22  not opt in?  Why should they not be able to say that?
23          MS. SCHRETER:  Your Honor, we don't believe that
24  that's -- we believe that part of our reason for resolving this
25  case is to have it resolved.

1    THE COURT:  Sure.  They have it covered up.

2    MS. SCHRETER:  No, your Honor, that is certainly not
3 what we are looking to do.

4    THE COURT:  Then, why not permit people to talk about
5 it?

6    MS. SCHRETER:  Because we don't want to have these
7 kinds of discussions going on in the workplace where they're
8 going to be disruptive.  They have an ample opportunity to
9 consult with very experienced class counsel or other counsel.
10 In fact, the notice advises them they can retain other counsel.

11    THE COURT:  Or themselves.  Frankly, you are going to
12 have to have a better justification for it than it will be
13 disruptive for them to be thinking about a $17,000,000 failure
14 to comply with the wages and hours statutes by Partners and
15 talking about it.  I just simply do not see it.  I certainly do
16 not see it on this basis.

17    I turn, then, to the service payments.  I do not know
18 what these people did.  $15,000.  All they did is permitted
19 their names to be put at the head of the caption.  That is all
20 that I know about it.  And I am not a big fan of service
21 payments in the absence of some showing that they have done
22 something other than been a backboard against which counsel
23 tosses out suggestions.  I do not know what they did, how they
24 directed the litigation.  We function under the fiction that
25 this is client-directed litigation, when, of course, it appears

1   to be lawyer-directed, at least on the plaintiffs' side.
2           So, my view of setting out an order saying I
3   preliminarily approve this --
4           MR. SOLOMON:  And I understand you have nothing in
5   front of you yet on our incentive application now, so I
6   understand your concern.  And I agree; I wouldn't expect you to
7   issue an order finally approving their amount without seeing
8   the record.
9           THE COURT:  I am not.  I am not but I am not even
10  going to issue an Order of Notice regarding this until I see
11  something that they have done other than lend their names to
12  your efforts.
13          MR. SOLOMON:  And at this point I think the reason for
14  the notice is to let the class members know that the greatest
15  amount that they would be looking for was this, not that -- and
16  we can change the language so that they are aware --
17          THE COURT:  I would think that you would want to, if
18  you want to reapply --
19          MR. SOLOMON:  Right.
20          THE COURT:  -- for the authorization of notice here.
21          MR. SOLOMON:  Okay.
22          THE COURT:  But one reading this might say, Well, the
23  judge has looked at this and said, $15,000 is going to be okay,
24  $5,000 per head is going to be okay.  I have not said that.  I
25  do not know whether I would give them anything, and, if so,

1   why.

2   MR. SOLOMON: Understood.

3   THE COURT: I turn to counsels' fees: One-third.
4   One-third is what generally I am prepared to give after full
5   litigation. I do not know what hours have been spent, I do not
6   know how they have been spent. And for me even to suggest that
7   I am going to permit that and permit it out of the amount that
8   is due and owing the class members is simply improvident on my
9   part.

10  In point of fact, it puts class counsel in conflict
11  with class members, since, to the degree that class counsel
12  gets more money out of the settlement amount, the class members
13  get less. That is always a tension, it is a tension here, and
14  before I address that, I want to be sure that I have received
15  adequate support for it.

16  Now, this distribution of undistributed amounts. The
17  Massachusetts League of Community Health Centers. Is there any
18  affiliation between the defendants, direct or indirect, between
19  the defendants and the Massachusetts League of Community Health
20  Centers?

21  MS. SCHRETER: Your Honor, certainly there is an
22  indirect relationship between them. These amounts would be
23  wholly independent of what other contributions that the System
24  makes to those particular entities.

25  THE COURT: It would, but let me understand what the

1   nature of the relationship is.  Partners has community health
2   centers, right?
3           MS. STODDARD:  These are not Partners' -- the Partners
4   Health Centers that operate under their license are not these.
5           THE COURT:  Who are these?
6           MS. STODDARD:  There are a number of community health
7   centers that are unaffiliated with hospitals.
8           THE COURT:  And every one who is unaffiliated is in
9   the Massachusetts League of Community Health Centers?
10          MS. STODDARD:  I don't know that for certain.
11          THE COURT:  Well, I would like to know that --
12          MS. STODDARD:  We can find that out.
13          THE COURT:  -- because I am not authorizing the
14  residual to go to something that is basically either an
15  affiliation of Partners or one of Partners' choice of support
16  at any given time.  So, I want to know whether Partners has
17  given money to Massachusetts League of Community Health Centers
18  and I want to know what the relationship is.
19          This settlement, the kind of gag-order settlement, I
20  can imagine someone saying that it is a little bit like the
21  Pogo cartoon:  We have seen the enemy, and he is us.
22          So, if there is money that is residual that is going
23  to be given to something that Partners would have given money
24  to anyway or has some affiliation with, I want to know that.
25  And I am unlikely, by the way, to authorize a settlement that

1   has that kind of affiliation, direct or indirect.  I have some
2   considerable concern about this theme and variation on cy-pres,
3   which, perhaps it has to do with the Christmas season that the
4   judge is supposed to authorize spending money on some worthy
5   cause.
6         This is the settlement of a legal dispute, not the
7   opportunity for charitable contribution, and particularly
8   charitable contribution that in some fashion, directly or
9   indirectly, favors an interest of Partners.  So, I want to know
10  about that.
11        Now, I turn to these questions of opt out and opt in.
12  They are very unclear, frankly.  If I were reading it -- I was
13  reading it -- but if I were a member of the class, which I do
14  not think I am, I would not understand what in the hell you are
15  talking about, and particularly having to do with the two
16  classes and having to do with the fact that there is litigation
17  in this District that raises questions about wages and hours
18  theories under state law.  It has got to be explained more
19  fully than this explains it, explains it in a way that someone
20  other than the people who actually negotiated think that they
21  know what it means.
22        So, for those reasons, I am a little concerned about
23  the notice.
24        Now, the "Middle District of Massachusetts" is
25  mentioned on page 11 of Exhibit 4 on the fourth line.  I assume

1  that this was cloned from some notice saying the Middle
2  District of Georgia, or the Middle District or of Florida or
3  someone somewhere else.  But, as I indicated, not to make too
4  much of it, this suggests less than complete attention to what
5  I think is a very important responsibility on the part of the
6  parties.
7          The short of it is, I do not find a grounds for
8  providing authority to notice it, and so, I am going to deny
9  the motion.
10         Now, I assume the parties plan on submitting something
11 that more adequately deals with the issues that I have raised
12 here.  Are there any other issues that, on reflection, you
13 think about?  And, if so, when will I receive such materials?
14         MS. SCHRETER:  Your Honor, Mr. Solomon and I will get
15 together immediately.  I am actually leaving the country this
16 Saturday.
17         THE COURT:  Not as a result of this?
18         MS. SCHRETER:  No, your Honor.  I will return on the
19 5th, and I believe that within 10 days thereafter that we could
20 be in a position to submit additional papers to the Court.
21         THE COURT:  Let us just set a time.  This is not a
22 test of endurance for the parties or an effort to interfere
23 with any long-planned alternative uses of your time, but I want
24 to get on this.  As you can see --
25         MS. SCHRETER:  Certainly.

1       THE COURT:  -- I have spent some time thinking about
2    this settlement.
3       So, if I were to say the 28th of January, is that
4    sufficient time to kind of pull things together and address the
5    issues that I have raised?
6       MS. SCHRETER:  I believe so, your Honor.
7       MR. SOLOMON:  I believe so.  I'm sorry, your Honor.
8    Would that be a submission date?
9       THE COURT:  That would be a submission date, and then
10   I will review the materials and decide about whether or not to
11   -- or not whether or not -- I will have a hearing on it, but I
12   want to review the materials before I decide on that.
13      Although, frankly, I think I can set a hearing date.
14                            (Pause)
15      THE COURT:  What I would like to do is, having in mind
16   competing obligations and my intention to read these papers
17   very carefully, is, set it down for March 2nd at 2:30, and if
18   you want to extend the date for filing a little bit, that is
19   fine.  I ordinarily would have done it within two weeks, but I
20   do not think I can fairly do that.  So, it is up to you.
21      Maybe what I will do is say, provisionally I will say
22   January 28th.  If you want a continuance to no later than two
23   weeks before the hearing, I will be likely to entertain it.
24      MS. SCHRETER:  Thank you, your Honor.
25      THE COURT:  But I would like to have that schedule,

1   and I think that, frankly, working on this attentively while it
2   is fresh in your minds would be useful.
3          But, for the papers that are submitted, not to make
4   too fine a point of it, the undertaking that I am making, but I
5   will make only after vigorous and rigorous evaluation, is
6   authorizing notice, not preliminarily approving.  I do not
7   approve anything until I have the final fairness hearing.  I
8   think the ALI treatment of aggregate litigation captures that
9   concept.
10         All right?
11         MR. SOLOMON:  Understood.  Very good.
12         THE COURT:  We will be in recess.
13         THE CLERK:  All rise.
14  (The Honorable Court exited the courtroom at 12:05 p.m.)
15  (WHEREUPON, the proceedings adjourned at 12:05 p.m.)
16
17
18
19
20
21
22
23
24
25

C E R T I F I C A T E

1
2
3
4     I, Brenda K. Hancock, RMR, CRR and Official Reporter
5  of the United States District Court, do hereby certify that the
6  foregoing transcript constitutes, to the best of my skill and
7  ability, a true and accurate transcription of my stenotype
8  notes taken in the matter of *Hamilton, et al, v Partners*
9  *Healthcare System, Inc., et al*, No. 1:09-cv-11461-DPW and
10  1:09-cv-11725-DPW.
11
12
13
14
15
16  Date: December 27, 2010    /s/ *Brenda K. Hancock*
17                                 Brenda K. Hancock, RMR, CRR
18                                 Official Court Reporter
19
20
21
22
23
24
25