UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DIANE HAMILTON, LYNNE P.          )
CUNNINGHAM and CLAIRE KANE,       )
on behalf of themselves and      )
all other similarly situated,    )
                                 )
             Plaintiffs,          )
                                 )   Civil Action NO.
v.                               )   09-11461-DPW
                                 )
PARTNERS HEALTHCARE SYSTEM,       )
INC., PARTNERS COMMUNITY          )
HEALTHCARE, INC., THE BRIGHAM     )
AND WOMEN'S HOSPITAL, INC.,       )
BRIGHAM AND WOMEN'S/FAULKNER      )
HOSPITALS, INC., MARTHA'S         )
VINEYARD HOSPITAL, INC., THE      )
MASSACHUSETTS GENERAL             )
HOSPITAL, MCLEAN HEALTHCARE,      )
                                 )
INC., THE MCLEAN HOSPITAL         )
CORPORATION, NANTUCKET            )
COTTAGE HOSPITAL, NEWTON-         )
WELLESLEY HOSPITAL, NEWTON-       )
WELLESLEY HEALTHCARE SYSTEM,      )
INC., NORTH SHORE CHILDREN'S      )
HOSPITAL, INC., NORTH SHORE       )
MEDICAL CENTER, INC., NSMC        )
HEALTHCARE, INC., THE SALEM       )
HOSPITAL, UNION HOSPITAL          )
AUXILIARY OF LYNN, INC., and      )
FAULKNER HOSPITAL, INC.,          )
                                 )
             Defendants.          )

MEMORANDUM AND ORDER
July 21, 2016

Plaintiffs Diane Hamilton, Lynne P. Cunningham and Claire

Kane (collectively, "Plaintiffs") brought this action raising

federal claims on behalf of themselves and all other similarly

situated employees of a number of healthcare facilities

allegedly affiliated with Partners Healthcare System, Inc.

Plaintiffs contend that their employers maintain policies in

violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §

201 *et seq.* (First Cause) depriving them of compensation for

time worked.   Plaintiffs further contend that their employers'

policies violate recordkeeping (Second Cause) and fiduciary

(Third Cause) responsibilities under the Employee Retirement

Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and

constitute a scheme to deceive Plaintiffs and deprive them of

their wages using mail fraud in violation of the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §

1961 *et seq.* (Fourth Cause).   The defendants moved [Dkt. No.

115] for judgment on the pleadings on all counts.[1]   By

---

[1] The original complaint in this action remains operative.
Although the parties jointly stipulated, in anticipation of a
class action settlement, to the filing of an amended complaint
on September 3, 2010 [Dkt No 88], I did not approve the class
action settlements proposed by the parties.  Consequently, no
Order was entered as to the amended complaint.   Both the
defendants and the plaintiffs withdrew their assent to the
filing of the amended complaint [Dkt Nos. 129 (Defendants) & 137
(Plaintiffs)] following rejection of the settlement proposals.
The Defendants had previously answered the original complaint;
consequently, the pleadings are closed for purposes of the Fed.
R. Civ. P 12(c) motion now before me.
 Plaintiffs' Fifth Cause of action, alleging estoppel, was
dismissed with prejudice by stipulation of the parties [Dkt. No.
83].

endorsement, I have granted [Dkt. No. 221] the motion by endorsement.  This Memorandum and Order provides the parties with the extended explanation I promised for that disposition of the motion.

## I. BACKGROUND

The named defendants in this action are the following entities:  Partners HealthCare System, Inc., Partners Community Healthcare, Inc., The Brigham and Women's Hospital, Inc., Brigham and Women's/Faulkner Hospitals, Inc., Martha's Vineyard Hospital, Inc., The Massachusetts General Hospital, McLean Healthcare, Inc., The McLean Hospital Corporation, Nantucket Cottage Hospital, Newton-Wellesley Hospital, Newton-Wellesley Health Care System, Inc., North Shore Children's Hospital, Inc., North Shore Medical Center, Inc., NSMC Healthcare, Inc., The Salem Hospital, Union Hospital Auxiliary of Lynn, Inc., and Faulkner Hospital, Inc.[2]  Compl. ¶ 14.

---

[2] The complaint also named Youville Hospital and Rehabilitation Center, Inc., James J. Mongan, M.D., and Dennis D. Colling as defendants. Compl. ¶ 14.  Plaintiffs voluntarily dismissed Youville Hospital and Rehabilitation Center, Inc. by notice on December 23, 2009 [Dkt. No. 45], and these individual defendants by stipulation on July 2, 2010 [Dkt. No. 83].

In their complaint, Plaintiffs also list 27 health care facilities and centers associated with the named defendants and over 100 "affiliated" health care facilities and centers. *Id.* ¶¶ 15-16. Plaintiffs refer to the named defendants, their facilities and centers, and the affiliated facilities and centers as "Partners" or "Defendants." *Id.* ¶ 17. With respect to the Plaintiffs themselves, the complaint merely states that they were "[a]t all relevant times . . . employees under the FLSA, employed within this District and resid[ing] within this District," *id.* ¶ 76, and provides no further details regarding their employment.

Plaintiffs' claims are premised on allegations that Defendants maintain pay policies that deny Plaintiffs their compensation for all hours worked. *Id.* ¶ 79. In particular, Plaintiffs allege that Defendants (1) automatically deduct thirty minutes of time per day from each employee's paycheck for meal breaks without ensuring that such breaks are taken, (2) suffer or permit Plaintiffs to work before and/or after each scheduled shift without compensation, and (3) suffer or permit Plaintiffs to attend compensable training programs without pay. *Id.* ¶¶ 80-108.

Plaintiffs filed this action in this court on September 3, 2009. The next week, they filed a complaint in the Middlesex

4

Superior Court asserting violations of Massachusetts wage laws, MASS. GEN. LAWS ch. 149, §§ 148, 150 & ch. 151 §§ 1A, 1B, and claims under Massachusetts contract and tort law.  On October 16, 2009 the Defendants removed the state claim action to this court, where it has been docketed as 09-cv-11725.

The plaintiffs' complaint was met with a motion to dismiss the RICO count, asserting inadequate pleadings. [Dkt. No. 10]. When the parties reported that they were engaged in mediation before any hearing, I denied the motion to dismiss and the motion for remand "without prejudice to resubmittal if the ongoing protracted mediation process proves unsuccessful." (Unnumbered docket entry 05/6/2010).

The mediation process ultimately generated two successive motions for preliminary approval of class and collective action settlements.  At separate hearings on each wave of motions, I denied them because — for a variety of reasons — I could not find the settlements proposed had any prospect of final approval as fair, adequate or reasonable.  *See generally* Dkt. No. 95 (Dec. 23, 2010 Tr. concerning initial motion for preliminary approval); Dkt. No. 110 (Mar. 2, 2011 Tr. concerning amended motion for preliminary approval).  My fundamental concern, as expressed at those hearings, was that the settlement proposals - involving some 63,000 employees in a multiplicity of job

5

classifications at a multitude of institutional settings -
raised inadequately addressed structural problems.  *Cf. In re
Payment Interchange Fee and Merchant Discount Antitrust
Litigation,* 2016 WL 3563719 at *8 (2d Cir. June 30, 2016).[3]

Although I informed the parties that I would entertain one
last effort by them aimed at securing approval to notice a
proposed settlement, the defendants instead resumed pleadings
motion practice by filing motions for judgment on the pleadings
as to all counts in both the federal claim and the state claim
actions.  At a scheduling conference after those motions were
filed, Plaintiffs' Counsel voiced the possibility that they
might seek leave to amend, but have never followed through with
a proper motion to amend.[4]  After an extended period of time I

---

[3] I recognize that the courts have imposed a less demanding
predicate burden for conditional certification of collective
actions under the FLSA than for Rule 23 settlement class
certification.  The plaintiffs' pleading deficiencies were so
fundamental that conditional certification under only the FLSA
would be no less improvident than under Rule 23.

[4] A request to amend, made in argument, "does not constitute a
motion to amend a complaint." *Gray* v. *Evercore Restructuring
L.L.C.*, 544 F.3d 320, 327 (1st Cir. 2008).  "In the absence of
exceptional circumstances, a district court is under no
obligation to offer a party leave to amend when such leave has
not been requested by motion." *Hochendoner* v. *Genzyme Corp.*,
No. 15-1446, 2016 WL 2962148, at *9 (1st Cir. May 23, 2016).  No
motion to amend, let alone no exceptional circumstances, has
been presented here despite a substantial passage of time before
issuance of the final judgment today.

explain in this — and the related Memorandum and Order I enter
in the state claims action today — the reasons why I am entering
the final judgments in this and the related case on the basis of
the operative complaint.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that a
motion for judgment on the pleadings may be made "after the
pleadings are closed – but early enough not to delay trial."  A
motion for judgment on the pleadings is evaluated under the same
standard as a motion to dismiss.  *Remexcel Managerial
Consultants, Inc.* v. *Arlequín*, 583 F.3d 45, 49 n.3 (1st Cir.
2009) (citing *Citibank Global Mkts., Inc.* v. *Rodríguez Santana,
et al.*, 573 F.3d 17, 23 (1st Cir. 2009) ("[T]o survive a motion
to dismiss (or a motion for judgment on the pleadings), the
complaint must plead facts that raise a right to relief above
the speculative level.")); *see also Erlich* v. *Ouellette,
Labonte, Roberge and Allen, P.A.*, 637 F.3d 32, 35 n.4 (1st Cir.
2011) (describing the standards for evaluating motions to
dismiss and motions for judgment on the pleadings as
"essentially the same").

Motions to dismiss are reviewed "accepting as true all
well-pleaded facts" in the complaint, "analyzing those facts in

the light most hospitable to the plaintiff's theory, and drawing all reasonable inferences for the plaintiff." *United States ex. rel. Hutcheson* v. *Blackstone Med., Inc.*, 647 F.3d 377, 383 (1st Cir. 2011).

A complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" as required by FED. R. CIV. P. 8(a)(2).  While a complaint attacked on a motion to dismiss "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The First Circuit has summarized the *Twombly* and *Iqbal* standard as requiring "an adequate complaint" under Rule 8(a)(2) to "provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernández* v. *Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

*Iqbal* and *Twombly* set out two working principles underlying the standard for adequately pled complaints; these principles translate to a two-pronged approach for courts evaluating motions to dismiss. *Id.* The first principle is that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A court must therefore begin its analysis by "identifying and disregarding statements in the complaint that merely offer 'legal conclusion[s] couched as . . . fact[ ]' or '[t]hreadbare recitals of the elements of a cause of action.'" *Ocasio-Hernández*, 640 F.3d at 12 (citations omitted) (alterations in original). Only factual allegations, not conclusory statements regarding the applicability of law, may be considered in assessing whether the Plaintiff has satisfied the pleading standard.

The second working principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. If the recited facts "do not permit the court to infer more than the mere possibility of misconduct," the complainant has failed to show entitlement to relief. *Id.* In evaluating the complaint, the "[n]on-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." *Ocasio-Hernández*, 640 F.3d

at 12.   The court may not assess the likelihood of proving the factual allegations but instead must evaluate facial plausibility based on whether the factual content, if proven, "'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 663).

### III. ANALYSIS

At the threshold, Defendants challenge Plaintiffs' standing, citing Plaintiffs' failure to allege an employment relationship with any particular defendant.   Defendants further argue that Plaintiffs fail to plead facts sufficient to allege plausible FLSA, ERISA, or RICO claims.   I begin with a discussion of First Circuit case law considering similar complaints and then apply those decisions in the context of this case and the arguments the parties have made to me.

### A.   *The First Circuit's Treatment of Hospital Compensation Cases*

The First Circuit has addressed three related cases, which it refers to as "hospital compensation cases," asserting substantially similar claims to those presented by Plaintiffs' Counsel here.   *See Manning* v. *Boston Medical Center Corp.*, 725 F.3d 34, 39 (1st Cir. 2013) ("*Manning A*")[5]; *Cavallaro* v. *UMass*

_____

[5] The multiplicity of published opinions regarding the hospital

*Mem'l Healthcare Inc.*, 678 F.3d 1 (1st Cir. 2012) ("*Cavallaro A*"); *Pruell* v. *Caritas Christi*, 678 F.3d 10 (1st Cir. 2012) ("*Pruell A-2*").  Each complaint asserted that a hospital network violated federal and state wage-and-hour laws in precisely the same ways: by requiring or permitting unpaid work to be performed during meal breaks due to an automatic timekeeping deduction, before and after employee shifts, and in training programs.  Thus, while "precise rules will always be elusive" in determining whether a complaint states an adequate claim for relief, *Pruell A-2*, 678 F.3d at 15, the First Circuit's three hospital compensation case opinions provide an unusually clear map of the relevant terrain.  They lay out precisely what information must be alleged to state these wage-and-hour claims in the hospital context plausibly.

In *Pruell A-2*, the First Circuit found conclusory and speculative the statement that plaintiffs "regularly worked hours over 40 in a week and were not compensated for such time."

---

compensation matters litigated in this district has caused me to adopt a protocol for citations in the several Memoranda and Orders I am issuing today.  Thus, the First Circuit opinions in the cases are identified by the name of the initial identified plaintiff followed by the letter "A" and in the *Pruell* matter, a number indicating the order of issuance of appellate opinions in that matter.  Published District Court opinions in the matters are numbered in chronological order by the name of the initial identified plaintiff followed by a roman numeral.

678 F.3d at 13.  The court also held that additional specificity provided by the alleged mechanisms for undercompensation – the unpaid meal breaks, pre- and post-shift work, and training sessions – was not enough to render the complaint adequately pled.  *Id.* at 14.  Without examples of the unpaid time, ideally including descriptions of the type of work performed, the complaint did not show that the relevant work was compensable (the court noted that various types of pre-shift work or training programs are non-compensable) or that the defendants did not make it up to the employees through premium pay of one form or another.  *Id.*

In *Cavallaro A*, the First Circuit focused on a different deficiency in the complaint: the failure to identify any employer for the named plaintiffs.  678 F.3d at 9-10.  It also rejected plaintiffs' arguments that since under a "joint employer" or "integrated enterprise" theory liability could extend beyond a particular hospital to the network, it was not necessary to name any plaintiff's direct employer specifically.  To the contrary, the First Circuit advised, "some direct employer needs to be identified before anyone in the group could be liable on the theory that some or all were responsible." *Id.* at 10.

12

The complaint in this case suffers from both of these deficiencies.  As with the *Cavallaro* complaint, it does not identify what defendant actually employed the plaintiffs.  It states only that the named plaintiffs "were employees under the FLSA, employed within this District and reside within this District."  [Dkt 1 ¶ 76].  And as with the *Pruell* complaint, only the most general allegations of undercompensation are provided without any of the examples or other forms of specificity that could show a plausible claim of wage-and-hour violations.  Indeed, the complaint before me does not even allege that plaintiffs regularly worked more than 40 hours in a week, a most basic predicate fact for finding overtime violations.

In contrast, the First Circuit in *Manning A* found the FLSA allegations to be sufficient.  725 F.3d at 47.  That complaint identified the specific jobs of the named plaintiffs and what work they performed during their meal breaks and before and after shifts, describing nurses who chart or monitor patients during the breaks and an administrative assistant who made phone calls and drafted correspondence during her unpaid time.  *Id.* at 45-46.  The *Manning* complaint also included allegations that estimate how often the named plaintiffs worked forty hour-per-week shifts: some regularly, some once a month, and some once a

13

year.  *Id*. at 46-47.  None of this detail, which the First
Circuit found important in distinguishing the *Manning* pleading
from the *Pruell* and *Cavallaro* complaints, appears in the
complaint before me.  Nor does any other form of specificity —
not otherwise highlighted by the First Circuit — distinguish
this complaint from those in *Pruell* or *Cavallaro*.  No other
information is provided that offsets the plaintiff's failure to
identify their employers, their specific job descriptions, their
staffing patterns or the type of work for which they were not
compensated.  Under clear precedent – precedent with the unusual
benefit of analyzing complaints that to a large degree were
"'substantially identical' to the one at issue in this case,"
*Manning A*, 725 F.3d at 42 (quoting District Court) – the
complaint now before me fails adequately to state a claim under
the FLSA.

With this First Circuit case law regarding the pleading of
hospital compensation cases as backdrop, I now turn to more
detailed consideration of the specific shortcomings of the
operative complaint in this case.

## B. *Standing and Employment Relationship*

Defendants argue Plaintiffs lack standing because they have
failed to allege that they were employed by any particular
defendant, much less by all of the individual defendants or

entities listed in the caption of the case or described in the complaint.   Defendants argue that the complaint contains insufficient facts to demonstrate that any individual entity qualifies as one of the Plaintiff's employers under the FLSA.

Although presented as distinct issues, the questions whether there is standing and whether Plaintiffs have alleged an employment relationship under FLSA are here essentially the same.   The existence of the FLSA cause of action, and by extension the ERISA and RICO causes of action premised on FLSA violations, *see* Compl. ¶¶ 151-58, is dependent on a threshold finding that Plaintiffs are employees of Defendants under the FLSA.   As a result, if Plaintiffs have failed to allege a plausible FLSA employment relationship, there is no case or controversy and Plaintiffs do not have standing.[6]

The FLSA regulates aspects of the relationship between employers and employees, unless certain exemptions apply.   29 U.S.C. § 201 *et seq.*   Employees may bring a private right of

---

[6] Despite the fact that the complaint is filed as a putative class action, each named plaintiff must demonstrate standing in her own right.   *See Sosna* v. *Iowa*, 419 U.S. 393, 402 (1975) (explaining that, as a general matter, a named plaintiff must have a case or controversy at the time a complaint is filed and at the time of class certification).   The Constitution's Article III case or controversy requirement "must be satisfied at each and every stage of the litigation."   *Cruz* v. *Farquharson*, 252 F.3d 530, 533 (1st Cir. 2001).

action to recover minimum wages or overtime wages not paid by an employer in violation of the FLSA. *Id.* §§ 206, 207, 216(b). Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee," *id.* § 203(d), and a "person" is "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons," *id.* § 203(a). Generally an "employee" is "any individual employed by an employer," *id.* § 203(e)(1), and "employ" means "to suffer or permit to work," *id.* § 203(g).

As noted, the complaint contains little information about Plaintiffs, only stating that they were, "at all relevant times . . . employees under the FLSA, employed within this District and reside within the District."[7]  Compl. ¶ 76.  The allegations contain no facts as to the particular entity which employed Plaintiffs or the location of their employment, job title, or dates of employment.  As Plaintiffs' Counsel have been instructed by the Second Circuit, this is insufficient pleading in a wage-and-hour case.  *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013)

---

[7] The class members are described as "those employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked."  Compl. ¶ 77.

("Plaintiffs' actual and direct employer is an essential element of notice pleading under these circumstances.").

Plaintiffs argue that it is unnecessary to identify which Defendant employs each individual because Defendants together constitute a joint employer or a single "enterprise" and may therefore be held liable jointly, or as one entity.  Plaintiffs conflate the distinct concepts of joint employer liability and that of employment in an "enterprise."  I will unbundle the concepts by addressing them separately.

In support of the complaint's legal conclusion that "defendants are the employer (single, joint or otherwise) of the Plaintiffs and Class Members and/or alter egos of each other," Compl. ¶ 25, Plaintiffs allege that the named Defendants "are related organizations through, for example, common membership governing bodies, trustees and/or officers and benefit plans." Compl. ¶ 14.  Plaintiffs also allege that named Defendants and their affiliates "have centralized supply chain management, financial, computer, payroll and health records systems that are integrated throughout their locations," *id.* ¶ 21; their "labor relations and human resources are centrally organized and controlled, including" through the employment of a Vice President of Human Resources and "maintenance of system-wide policies and certain employee benefit plans," *id.* ¶ 22; and they

"share common management, including oversight and management by a senior management team, Trustees and Institution Leadership," *id.* ¶ 23.

In addition, Plaintiffs make certain conclusory statements, to which I give no weight. These include the statements that "Partners is an enterprise," *id.* ¶ 18, and that "Defendants consider themselves a single employer under the FLSA," *id.* ¶ 26, both of which are essentially legal conclusions.  I disregard such statements in considering whether it is reasonable to infer that Defendants may be held liable as employers under the FLSA.

### 1.  Joint Employer Liability

The Supreme Court has instructed that the FLSA's use of the term "employ," is broad, explaining that "employ" and related terms are "'comprehensive enough to require its application to many persons and working relationships, which prior to [the FLSA], were not deemed to fall within an employer-employee category.'"  *Rutherford Food Corp.* v. *McComb*, 331 U.S. 722, 729 (1947) (quoting *Walling* v. *Portland Terminal Co.*, 330 U.S. 148, 150 (1947)).  The First Circuit applies an "economic reality" analysis to the question whether an employment relationship exists under the FLSA.  *Chao* v. *Hotel Oasis, Inc.*, 493 F.3d 26, 33-34 (1st Cir. 2007).  Under this test, the actual circumstances of employment "prevail[] over technical common law

concepts of agency." *Donovan* v. *Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983).

The FLSA's expansive concept of the employment relationship extends to circumstances where an employee is jointly employed by multiple employers. *See Falk* v. *Brennan*, 414 U.S. 190, 195 (1973) (finding maintenance workers to be employees of building owners as well as of a management company). However, the cases are clear that joint employment exists only when there is an actual employment relationship between the employee and each joint employer.

In *Baystate Alt. Staffing, Inc.* v. *Herman*, 163 F.3d 668 (1st Cir. 1998), the First Circuit deployed four factors identified by the Ninth Circuit in *Bonnette* v. *California Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983), to evaluate whether an entity is a joint employer of an individual. These factors examine "the totality of the circumstances bearing on whether the putative employee is economically dependent on the alleged employer" and include "whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Baystate*, 163 F.3d at 675; *see also Donovan*, 712 F.2d at 1514 (finding that "corporate officers

19

with a significant ownership interest who had operational
control of significant aspects of the corporation's day to day
functions, including compensation of employees, and who
personally made decisions" resulting in FLSA violations were
liable as joint employers).  The *Baystate* court explained that
the first two factors "address the extent of a putative
employer's control over the nature and structure of the working
relationship," *Baystate*, 163 F.3d at 675, and the second two
"address the extent of a putative employer's control over the
economic aspects of the working relationship." *Id.* at 676.
Thus, there must be some element of an actual employment
relationship between an employee and each putative joint
employer.  Put differently, joint employer status recognizes
that an employee can have multiple discrete but related
employers, not that employment status can be ineffable.

Plaintiffs rely in part on the First Circuit's opinion in
*Donovan* to argue that factors such as "operational control" must
be considered in evaluating employment relationships.  *See* 712
F.2d at 1514.  *Donovan* narrowly addressed the question of
personal liability for corporate officers, specifically whether
officers may be held to be jointly liable for violations under
the FLSA, based on their direct control over conditions of
employment and responsibility for the FLSA violations, even

though the officers do not personally employ individuals.  *Id.*
Plaintiffs here made no allegations that any particular
Defendants (apart from the individuals who have been removed
from the case)[8] have "significant ownership interest,"
"operational control of significant aspects of the corporation's
day to day functions, including compensation of employees," or
"personally made decisions" relevant to the alleged FLSA
violations with respect to Plaintiffs.  *Id.*

Plaintiffs also cite to an opinion letter from the United
States Department of Labor for the proposition that entities
comprising a "health care system" are joint employers for
purposes of the FLSA.  The opinion letter in fact contains no
such general conclusion, but rather finds that where an employee
actually works for more than one member of a health care system,
a joint employment relationship exists among the particular

---

[8] These allegations relate to the individual Defendants, James J.
Mongan ("Mongan") and David D. Colling ("Colling"), Compl. ¶¶
27-74, who are no longer parties to this case, *see supra* note 2.
The allegations assert that there is joint control over
employment issues.  Plaintiffs allege that Mongan, as President
and CEO of Partners and Colling, as Vice President of Human
Resources of Partners, maintain control over a variety of human
resources policies and employees' benefits and salaries.
Although Plaintiffs seem to argue these allegations imply
Partners as a whole has uniform policies that confer joint
liability, the facts necessary to demonstrate this proposition
are not alleged in the complaint except in the most conclusory
fashion.

entities that employ the individual.  U.S. Dept. of Labor, Wage
& Hour Division, Opinion Letter FLSA2005-15 (Apr. 11, 2005).
The opinion letter concludes that "a joint-employment
relationship exists in weeks in which an individual works for
more than one of" a health care "System's employers," conferring
joint and several liability for compliance with the FLSA with
respect to such employees.  *Id.*[9]

Plaintiffs do not address the factors laid out in *Baystate*.
They have not plausibly alleged that they are employed by any
one (or more) of the Defendants, and the conclusory invocation
of the theory of joint employment does not cure that deficiency.

2.  "Enterprise" or "Single Employer" Liability

Plaintiffs also argue that Defendants comprise a "single

---

[9] The Wage and Hour Division's regulations also reflect the
understanding that a joint employer *actually employs* the
employee in question.  In describing joint employment, these
regulations state that "[a] single individual may stand in the
relation of an employee to two or more employers at the same
time . . . since there is nothing in the act which prevents an
individual employed by one employer from also entering into an
employment relationship with a different employer." 29 C.F.R. §
791.2.  Joint employment exists under the regulations "if the
facts establish that the employee is employed jointly by two or
more employers, i.e., that employment by one employer is not
completely disassociated from employment by the other
employer(s)." *Id*.  In such a case "all of the employee's work
for all of the joint employers during the workweek is considered
as one employment for purposes of the Act," and all joint
employers are individually and jointly responsible for
compliance with the FLSA.  *Id.*

employer" or "integrated enterprise" and that, as a result,
Plaintiffs are "employed by all defendants."  The "integrated
enterprise" test is used to determine whether a group of related
employers are so interrelated that they should be treated as one
employer, often when determining whether to hold a parent
corporation liable for violations of a subsidiary.  This is
distinct from the "joint employer" analysis where two or more
distinct employers may be held liable when they have, in fact,
jointly employed particular individuals.[10]

The integrated enterprise test involves four factors: "(1)
interrelation of operations; (2) common management; (3)
centralized control of labor relations; and (4) common
ownership."  *Romano* v. *U-Haul Int'l*, 233 F.3d 655, 662 (1st Cir.
2000).  It was originally developed to "determine whether
interrelated companies should be treated as one entity under the
National Labor Relations Act, 29 U.S.C. § 164."  The test has

---

[10] Plaintiffs erroneously describe the factors considered in the
"integrated enterprise" test discussed more fully in the text
above as those "considered in determining whether separate
entities can be held jointly liable."  The cases cited describe
the "integrated enterprise" test and not "joint employer"
analysis. *See Penntech Papers, Inc.* v. *N.L.R.B*, 706 F.2d 18 (1st
Cir. 1983); *N.L.R.B.* v. *Browning-Ferris Indus. of Pennsylvania,
Inc.* 691 F.2d 1117, 1122 (3d Cir. 1982) (noting that "[t]he
'joint employer' and 'single employer' concepts are distinct");
*United Paperworkers Int'l Union, AFL-CIO, CLC* v. *Alden
Corrugated Container Corp.*, 901 F. Supp. 426 (D. Mass. 1995).

also been adopted for evaluating employer status in the context of Title VII of the Civil Rights Act, *Torres-Negrón* v. *Merck & Co., Inc.*, 488 F.3d 34, 41-43 & n.7 (1st Cir. 2007), the Americans with Disabilities Act, *id.* at 43, and the Family and Medical Leave Act, *see Engelhardt* v. *S.P. Richards Co., Inc.*, 472 F.3d 1, 4-5 (1st Cir. 2006), as well as other statutory schemes related to labor relations.

The First Circuit has not applied the "integrated enterprise" test in the context of the Fair Labor Standards Act.[11]   Application of the "integrated enterprise" theory has been addressed in the District Court for the District of Maine. *Anderson* v. *Theriault Tree Harvesting, Inc.*, No. 1:08-cv-330-JAW, 2010 WL 2490119 (D. Me. Jan. 20, 2010).   But Magistrate Judge Kravchuk in that opinion noted that the parties did not dispute the application of the integrated enterprise theory in the FLSA context.   *Id.* at *9.   She concluded in *Anderson* that the result there was the same under either the enterprise test or joint employer test.   *Id.*[12]

---

[11] *See Roman* v. *Guapos III, Inc.*, 970 F. Supp. 2d 407, 414-15 (D. Md. 2013) (rejecting "single employer" theory under FLSA but collecting cases applying the theory).

[12] The "integrated enterprise" test must be distinguished from the FLSA's application of certain terms to individuals "employed in an enterprise engaged in commerce or in the production of goods for commerce."   29 U.S.C. §§ 206, 207.   This provision is jurisdictional in nature; an employee "employed in an

I find it unnecessary to reach whether the "integrated enterprise" theory extends to the FLSA because Plaintiffs have failed to plead sufficient facts to demonstrate an employment relationship with any of the Defendants.  The First Circuit requires that some direct employer be identified before an integrated enterprise can be found.  *Cavallaro A*, 678 F.3d at 9-10.  Apart from the conclusory statement that Plaintiffs "were employees under the FLSA," the complaint is silent on the circumstances of Plaintiffs' employment, including their title(s), employer(s), location(s) of employment, and the "relevant" time period(s).  Even if Partners were effectively a single enterprise, plaintiffs have not made the requisite allegation regarding what entity formally employs them.  *See Cavallaro* v. *UMass Mem'l Healthcare Inc.*, No. 09-cv-40152, 2011 WL 2295023, at *5 (D. Mass. June 8, 2011) ("*Cavallaro II*"), *vacated and remanded to allow one last amendment to pleadings by Cavallaro* A, 678 F.3d 1, 10 (1st Cir. 2012) (concluding, in a

---

enterprise" is entitled to the protections in 29 U.S.C. §§ 206, 207.  *See Donovan* v. *Agnew*, 712 F.2d 1509, 1514-16 (1st Cir. 1983) (discussing whether the Secretary of Labor had shown that the corporation was an "enterprise" triggering application of § 207 separately from analysis of joint employment); *Chao* v. *A-One Med. Servs., Inc.*, 346 F.3d 908, 916-17 (9th Cir. 2003) (explaining that, because the employer was engaged in an "enterprise," the employees were subject to § 207 of the FLSA, but that joint liability is premised on working for more than one employer in a workweek).

case based on essentially identical fact-pleading by the same
counsel representing the plaintiffs in the case before me, that
"plaintiffs have not alleged sufficient facts to suggest that
even *one* of the defendants is their employer").  Because
Plaintiffs have not alleged a plausible employee-employer
relationship under the FLSA, their FLSA claim must fail on both
pleading and standing grounds.[13]

---

[13] I recognize that in addressing the pleadings in the parallel
state claims action presented in this hospital compensation
matter, I have made jurisdictional fact finding regarding the
actual employer of the named Plaintiffs.  *See Memorandum and
Order, Hamilton* v. *Partners Healthcare System, Inc.*, 09-cv-
11725-DPW (July 21, 2016, Dkt. No. 175) at 9-13.  I there found
Plaintiffs Hamilton and Cunningham to be employees of the
Shaughnessy-Kaplan Rehabilitation Hospital and Plaintiff Kane to
be an employee of Massachusetts General Hospital.  Shaughnessy-
Kaplan Rehabilitation Hospital is not identified as an
individually named defendant in the original and operative
complaint but rather as a "Health Center" (¶ 15) and "Affiliate"
(¶ 16) of the named defendants.  However, in the abandoned
amended complaints submitted in connection with the effort to
get settlement approval, *see* Note 1 *supra*, Shaughnessy-Kaplan
Rehabilitation Hospital was added as a named defendant in this
action (Dkt. No. 88-1, ¶ 14) and the state claim action (Dkt.
No. 89-1, ¶2), an implicit acknowledgment that the actual
employer of a named class member had not been identified
properly in the original complaint.  The jurisdictional fact
finding in the parallel state claim case, made over the
resistance of Plaintiffs' Counsel, may be seen to have cured one
deficiency in the complaint by providing, through no effort of
Plaintiffs' Counsel, the basis for finding a plausible
allegation of a specific employer-employee relationship in this
case. Nevertheless, as Subsections III C and D *infra*
demonstrate, even if the employer is seen as adequately pled as
a result of the action of the Court in the parallel case, there
remain substantial pleading deficiencies in the failure

### C.   FLSA Violations

Even if Plaintiffs had alleged a plausible employer-
employee relationship with some or all Defendants, their FLSA
claim must be dismissed because they have not alleged sufficient
facts to demonstrate that Defendants violated relevant
provisions of the FLSA.  Plaintiffs allege that Defendants
maintained policies that denied them "compensation for all hours
worked, including applicable premium pay rates."  Compl. ¶ 79.
The FLSA requires employers to pay a minimum wage for all hours
worked, 29 U.S.C. § 206, and overtime compensation for time in
excess of forty hours per workweek, *id.* § 207; Plaintiffs fail
to plead a violation of either requirement adequately.

To the extent that Plaintiffs purport to bring a minimum
wage claim under § 206(a) because they were denied "compensation
for all hours worked," they have failed to plead the necessary
elements of such a violation.  Section 206(a) requires that an
employer pay each employee a certain minimum dollar amount per
hour of work in any workweek.  *Id.* § 206(a)(1)(C).  The relevant

---

plausibly to allege violations of the relevant provisions of the
FLSA and of ERISA.

  I separately note that because the relevant "employer" in this
complaint for RICO purposes is an "enterprise," I do not, in any
event, rest my findings of deficiencies in the RICO count
pleading, *see* Subsection III E *infra*, on the particular hospital
entity employer of the Plaintiffs.

minimum wage was set at $7.25 per hour. *Id*. Although Plaintiffs allege that they were not specifically compensated for certain time periods, there is no allegation that their average hourly wage per week fell below that minimum amount. Courts have held that such a showing is necessary to demonstrate a violation of § 206(a). *See United States* v. *Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 & 494 (2d Cir. 1960) (holding that an allegation that the average hourly wage per week is not above the minimum wage is necessary to meet the requirements of § 206(a)); *Pruell II*, 2010 WL 3789318, at *2-3 (D. Mass. Sept. 27, 2010) (collecting cases applying the holding in *Klinghoffer*) *aff'd*, 678 F.3d 10, 15 (1st Cir. 2012). As a result, there is no reasonable basis to infer that a violation of § 206 has occurred.

Plaintiffs have also failed to allege facts sufficient to demonstrate a plausible claim for unpaid overtime payments under 29 U.S.C § 207, which requires employers to compensate employees at a rate of 1.5 times their regular rate of pay for any time worked in excess of forty hours per week. Plaintiffs make the general allegation that "if Plaintiffs' and Class Members' hours had been properly calculated, the time spent" work during meal breaks, before and after shifts, and during training, "often would include work that should have been calculated at

28

applicable premium rates." Compl. ¶¶ 98, 102, 106.
Notwithstanding these conclusory statements, Plaintiffs fail to
allege sufficient facts to demonstrate a plausible claim for
premium payments.

Plaintiffs do not state that the uncompensated time is in
excess of forty hours per week, and courts have consistently
found that, at a minimum, plaintiffs must make such an
allegation in order to plead a plausible § 207 claim. *Manning
A*, 725 F.3d at 46 (allegations that "plaintiffs worked more than
forty hours in a given work week . . . required to bring a FLSA
overtime claim."); *Nakahata*, 723 F.3d at 201 ("Plaintiffs must
provide sufficient detail about the length and frequency of
their unpaid work to support a reasonable inference that they
worked more than forty hours in a given week"); *Davis v.
Abington Mem. Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014) (same);
*Pruell* v. *Caritas Christi*, 2010 WL 3789318, at *3-4 (D. Mass.
Sept. 27, 2010) ("*Pruell I*") (same); *see generally Manning* v.
*Boston Med. Ctr. Corp.*, No. 09-cv-11463, 2011 WL 796505, at *1-
*2 (D. Mass. Feb. 28, 2011) ("*Manning I*") (concluding, with
respect to a similar complaint, that it was not possible to
"draw a reasonable inference of liability from this aggregation
of conclusory statements and general allegations"). As a

result, I find Plaintiffs failed to plead sufficient facts to allege a plausible claim for overtime pay under § 207.

## D.   *ERISA Claims*

Plaintiffs assert that two violations of ERISA arise out of Defendants' alleged underpayment of compensation under the FLSA. First, Plaintiffs contend that Defendants "failed to keep accurate records of all time worked" and that such records are "legally insufficient to determine benefits" and thus violated 29 U.S.C. § 1059(a)(1).  Compl. ¶ 153.  Second, Plaintiffs argue that Defendants breached their fiduciary duties under 29 U.S.C. § 1104(a)(1).  *Id.* ¶ 155.

The alleged ERISA violations are predicated on violations of the FLSA, and because Plaintiffs have failed to plead sufficient facts to allege a plausible cause of action under the FLSA, the ERISA claims must be dismissed as well.  *See Cavallaro II*, 2011 WL 2295023, at *7 (dismissing ERISA claims in similar action in light of the dismissal of FLSA claim), *vacated and remanded for an opportunity to amend the complaint*, 678 F.3d 1, 10 (1st Cir. 2012); *Pruell I,* 2010 WL 3789318 at *4 (same) *aff'd with respect to FLSA claim but vacated and remanded to allow an opportunity to amend the complaint*, 678 F.3d 10, 15 (1st Cir. 2012).  However, even if Plaintiffs had alleged plausible FLSA

claims, this complaint still does not support a plausible claim under ERISA.

Plaintiffs offer minimal facts in their complaint regarding pension plans applicable to the employees.  Their complaint merely states that "[d]efendants sponsor pension plans . . . for their employees" and "Plaintiffs and Class members participated in the Plans as plan participants and beneficiaries."  Compl. ¶¶ 121-22.  The complaint alleges that the Defendants' policies of under-compensating employees resulted in inaccurate records of time worked, *id.* ¶ 122, and that the Defendants failed to credit them "with all of the hours of service for which they were entitled to be paid" or credit or "investigate crediting overtime pay as compensation used to determine benefits to the extent overtime may be included as compensation under the Plans."  *Id.* ¶ 123.

Plaintiffs do not indicate who their employer is, what plan they participated in, or the fiduciary for any such plan. Moreover, they make no allegations about the terms of the pension plan or plans in which they participated even though recordkeeping "duties and the nature of the records required to be maintained can only be determined by looking to the language of the pension plans themselves." *Henderson* v. *UPMC*, 640 F.3d

524, 528 (3d Cir. 2011) (collecting cases).  As a result, they have failed to state a claim under ERISA.

## E.    RICO Claim

In their final claim, Plaintiffs contend that Defendants violated 18 U.S.C. § 1962(a) and (c) of the RICO Act by "refusing to pay their regular or statutorily required rate of pay" and by "devising a Scheme to obtain Plaintiffs' and Class Members' property by means of false or fraudulent representations, at least some of which were made in the misleading payroll checks which defendants mailed."  Compl. ¶ 158.  As a threshold matter, the RICO claim, like the ERISA claim, is predicated on deliberate violations of the FLSA. Because the FLSA claim has been insufficiently pled, Plaintiffs have no basis for alleging that the mailed paychecks contained false or fraudulent information about wages earned.  For this reason alone, the RICO claims must fail.  *See Pruell I*, 2010 WL 3789318, at *4.  However, even were this not the case, Plaintiffs have failed to meet the heightened pleading standard required to bring an action alleging violations of the RICO Act by fraud.

### 1.   RICO Allegations

Plaintiffs allege that Defendants engaged in racketeering activity related to a scheme to deprive Plaintiffs of

compensation.  The RICO provisions Defendants are alleged to have violated are as follows:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> • • •
>
> (c) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962.  "Racketeering activity" includes any act indictable under various state and federal laws, including 18 U.S.C. § 1341, prohibiting mail fraud.  *Id.* § 1961(1). Plaintiffs bring this action under 18 U.S.C. § 1964(c) which provides a civil remedy for those injured by an illegal activity described in § 1962.

### 2.  Pleading Standard

For a RICO claim to survive a motion to dismiss, the complaint must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L.* v. *Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  Because

33

Plaintiffs accuse defendants of racketeering activity involving mail fraud in violation of 18 U.S.C. § 1341, they must also allege "(1) a scheme to defraud based on false pretenses; (2) the defendant's knowing and willing participation in the scheme with the intent to defraud; and (3) the use of interstate mail or wire communications in furtherance of that scheme." *United States* v. *Cheal*, 389 F.3d 35, 41 (1st Cir. 2004).

RICO claims where the racketeering activity is mail or wire fraud are subject to a heightened pleading standard.  It is "well settled law in this circuit that RICO pleadings of mail and wire fraud must satisfy the particularity requirements" of Federal Rule of Civil Procedure 9(b).  *Ahmed* v. *Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997).  Rule 9(b) requires a party "alleging fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This heightened standard "is satisfied by an averment 'of the who, what, where, and when of the allegedly false or fraudulent representation.'"  *Rodi* v. *S. New England Sch. of Law*, 389 F.3d 5, 15 (1st Cir. 2004) (quoting *Alt. Sys. Concepts, Inc.* v. *Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004)).

In a RICO wire or mail fraud case, "'the pleader is required to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications

perpetrating that fraud.'"   *Cordero-Hernández* v. *Hernández-Ballestros*, 449 F.3d 240, 244 (1st Cir. 2006) (citations omitted).   The particularity standard has three purposes: (1) to place defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of fraud allegations as a pretext for groundless fishing expeditions; and (3) to protect defendants from charges of fraud that may damage their reputations.   *New England Data Servs., Inc.* v. *Becher*, 829 F.2d 286, 289 (1st Cir. 1987).

I find that Plaintiffs have failed to plead with sufficient particularity the facts on which the RICO mail fraud claim is based.   In particular, they have failed to allege which particular defendants sent the mailings, how the mailings were misleading, and during what time periods they were sent.   *See Becher,* 829 F.2d at 289.

### 3.   "In Furtherance" Element of Mail Fraud

Even overlooking the failure to plead fraudulent activity with particularity, Plaintiffs' complaint fails to point to any basis for concluding that the mailing of the paychecks satisfied the "in furtherance" element of mail fraud.[14]   As discussed by

---

[14] The First Circuit has advised that "the success of the scheme must be dependent in some way on the mailings, either in obtaining the desired objection in avoiding or delaying

35

Judge Saylor in *Cavallaro I*, 2010 WL 3609535 at *3, paychecks omitting the time employees actually worked would have increased the likelihood of discovery of the alleged scheme.  If an employee works 42 hours in a week, but the paycheck reflects compensation for only 40 hours, the employee would be alerted to the underpayment.  *Id.   See also Manning* v. *Boston Medical Center*, 2011 WL 796505, at *2 (adopting the reasoning of *Cavallaro I*) ("*Manning I*"), *Nakahata*, 723 F.3d at 204-5 (applying same reasoning).  As a result, even if Plaintiffs had provided sufficient particularity with respect to the alleged mail fraud, there is no plausible basis upon which the paychecks could be said to have been in furtherance of that alleged predicate.[15]

---

detection of the scheme."  *U.S.* v. *Greenleaf*, 692 F.3d 182, 186 (1st Cir. 1982).

[15] To the extent that Plaintiffs allege a RICO claim under 18 U.S.C. § 1962(a), that claim must also be dismissed.  As explained by Judge Saylor, "[i]n the First Circuit, the 'investment use rule' requires plaintiffs asserting a § 1962(a) cause of action to allege a specific injury flowing from the investment and use of racketeering proceeds."  *Cavallaro* v. *UMass Memorial Health, Inc.*, 2010 WL 3609535 at *5 (D. Mass. July 2, 2010) ("*Cavallaro I*") (quoting *Compagnie de Reassurance D'Ile de France* v. *New England Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995)).  None is alleged here.

## V. CONCLUSION

For the reasons outlined herein, I have granted Defendants'
Motion for Judgment on the Pleadings [Dkt. No. 115] and hereby
ORDER the Clerk to enter a judgment of dismissal as to all
claims.


*/s/ Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE